**Leroy K. SMITH and Denny Bynum, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Susan Humphrey Barnett, Commissioner, Palmer Correctional Center, State Board of Parole, Sam Trivette, Director, Board of Parole, David Cooper, Parole Board Member, Donald Bruce, Parole Board Member, Mike Miller, Parole Board Member, Alonzo Patterson, Parole Board Member, and Delores Weiler, Parole Board Member, Appellees.**

**No. S–5336.**

Supreme Court of Alaska.

April 29, 1994.

---

Ted Stepovich, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellants.

Michael J. Stark, Asst. Atty. Gen., and Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before MOORE, C.J., RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

Once prisoners serve their sentences taking into account whatever time credits they have accumulated for good behavior they must be released.[1] Prisoners who have been sentenced to a term of two years or more are released to the custody of the parole board for a period equivalent to their accumulated good behavior time. This is called a mandatory parole release.[2] The parole board imposes standard conditions and, in some cases, supplemental conditions of parole on mandatory parolees. Appellant, Denny Bynum, a mandatory parolee, challenges the regulations and procedures under which supplemental conditions of parole are imposed.

---

1. AS 33.20.030 provides:
 A prisoner shall be released at the expiration of the term of sentence less the time deducted for good conduct. A certificate of deduction shall be entered on the commitment by the warden, keeper, or the commissioner.

2. AS 33.20.040(a) provides:
 Except as provided in (c) of this section, a prisoner released under AS 33.20.030 shall be released on mandatory parole to the custody and jurisdiction of the parole board under AS 33.16, until the expiration of the maximum term to which the prisoner was sentenced, if the term or terms of imprisonment exceeded are two years or more. However, a prisoner released on mandatory parole may be discharged under AS 33.16.210 before the expiration of the term. A prisoner who was sentenced to a term or terms of imprisonment of less than two years shall be unconditionally discharged from mandatory parole.
 AS 33.16.900(7) provides:
 "[M]andatory parole" means the release of a prisoner who was sentenced to one or more terms of imprisonment of two years or more for the period of good time credited under AS 33.20, subject to conditions imposed by the board and subject to its custody and jurisdiction.

Probation officers are employees of the Department of Corrections. Appellant, Leroy K. Smith, a probationer, and formerly a mandatory parolee, contends that under the separation of powers doctrine probation officers must be employed by the judicial branch of state government.

## I.

Denny Bynum was convicted of sexual abuse of a minor in the first degree and was sentenced in May of 1985 to a term of imprisonment of eight years. Because of accumulated credits for good behavior in prison, his anticipated release date was August 18, 1990. In April of 1990 Bynum's institutional probation officer submitted a request to the parole board to have supplemental mandatory parole conditions imposed on Bynum. The request was made on a Department of Corrections form. The form notified Bynum of his right to submit his comments to the parole board.[3] Bynum promptly submitted his comments. He protested the proposed supplemental conditions which prohibited residing in a household with a person under the age of eighteen years, contact with his victim or with persons eighteen years old or younger, and the use of alcohol or drugs. The proposed conditions also permitted tests and searches for alcohol and drugs at any reasonable time. A board member reviewed Bynum's letter and set the supplemental conditions requested by the institutional probation officer in a document which explained his reasons.[4] The record does not reflect that this document was given to Bynum. However, the State contends that it, and the rec-

ords on which it is based, were available to Bynum under 22 AAC 05.095(b) and (h).[5] Bynum was sent a copy of his mandatory parole conditions about a month before he was released on mandatory parole.

Just prior to his release on mandatory parole, Bynum and Smith brought this action against the State and State corrections officials (referred to in this opinion collectively as the State), seeking, among other things, an immediate hearing to review the conditions placed on Bynum's mandatory parole, and a declaratory judgment declaring that the current practices relating to mandatory parole violate Bynum's rights to due process and equal protection. Smith and Bynum also sought a declaration that probation officers perform a judicial function and their placement in the executive branch violates the constitutional separation of powers doctrine.

All parties moved for summary judgment. While the motions were pending, Smith was discharged from mandatory parole and the parties agreed that Smith's claim relating to mandatory parole should be dismissed on standing and mootness grounds. Smith remains on probation and his separation of powers claim regarding probation officers remains. Following oral argument on the motions, the trial court denied the plaintiffs' motion for summary judgment and granted that of the State. A final judgment was entered from which this appeal has been taken.

## II.

The following questions are presented:

3. The notice stated:

 *Notice to the prisoner who is subject to this report:*

 This report is prepared for the Parole Board when establishing supplemental conditions of mandatory parole. You have ten working days from the date you receive your copy to add your comments. Information must be submitted in writing through your Institutional Probation/Parole Officer who will mail the comments to the Board.

4. The reasons were that Bynum had dropped out of the prison sexual offender program and was regarded as a high risk to reoffend. He had manufactured alcohol in prison and the discharge summary from the sexual offender program suggested that he had been addicted to marijuana. The discharge summary specifically

recommended no contact with minors under eighteen.

5. 22 AAC 05.095(b) and (h) provide:

 (b) In the absence of a state or federal law to the contrary, a prisoner or the prisoner's attorney must be granted access, upon request, to the prisoner's records in order to prepare for a classification, disciplinary, parole, revocation, or judicial hearing, or appeal from such a hearing, subject to (d) of this section.

 . . . .

 (h) If a hearing described in (b) of this section is not scheduled, a prisoner may have access, upon request, to the prisoner's records once every 12 months.

A. Was Bynum's right to procedural due process violated by the parole board in imposing supplemental conditions of parole?

B. Is 22 AAC 20.200, the regulation which imposes fourteen standard conditions of parole, inconsistent with AS 33.-16.150 which mandates one standard condition, and authorizes the board to require other conditions?

C. Are mandatory parolees denied equal protection of the laws because they are not permitted to appear before the parole board prior to their release while discretionary parolees are granted the right of an in-person appearance?

D. Does the placement of probation officers in the executive rather than the judicial branch of government violate the separation of powers doctrine? [6]

For the reasons expressed below we give a negative answer to each of these questions.

A. *Was Bynum's right to procedural due process violated by the parole board in imposing supplemental conditions of parole?*

■ The United States and the Alaska Constitutions provide that no person shall be deprived of life, liberty, or property without due process of law. U.S. Const. amend. XIV; Alaska Const. art. 1, § 7. In this case, Bynum contends that an Alaska inmate has a constitutionally protected "liberty" interest relating to mandatory parole conditions. Although Bynum does not succinctly describe this interest, we gather that it entails the right to be free from inappropriate conditions of parole—those which unduly interfere with a parolee's personal and property rights. The State takes no issue with Bynum's contention that he has a protected liberty interest in conditions of parole and we accept this implied concession.

The question presented in this case is whether the procedures afforded Bynum to challenge the special conditions of parole comply with the principle of due process.

We have stated that questions of this type depend on "the nature of the government function involved and the private interest affected by the government action." *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988) (quoting *Arctic Structures, Inc. v. Wedmore*, 605 P.2d 426, 436 (Alaska 1979)). More specifically, we have followed the lead of the Supreme Court of the United States which in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), stated that in order to determine what due process requires, three factors must be considered:

[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.

*Id.* at 335, 96 S.Ct. at 903, *quoted in Hilbers v. Mun. of Anchorage*, 611 P.2d 31, 36 (Alaska 1980). The Supreme Court has invoked the *Mathews* formulation in reviewing parole procedures. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 14, 99 S.Ct. 2100, 2107, 60 L.Ed.2d 668 (1979).

In order to assess the constitutional adequacy of the procedures available to Bynum, the procedures must first be identified. Alaska Statute 33.20.030 provides for mandatory parole "at the expiration of the term of sentence less the time deducted for good conduct." Alaska Statute 33.20.040 commits the disposition of a mandatory parolee to the parole board under AS 33.16. Part of the AS 33.16 parole system governs the imposition of parole conditions. Alaska Statute 33.16.-150(a) sets forth a condition that *all* parolees must obey the law. Subsection (b) of that section sets forth seventeen other conditions that "[t]he board may require" of parolees. The Alaska statutes, however, do not set

---

**6.** The parties attempt to raise the additional question of whether a prisoner may refuse a mandatory parole release. Bynum did not raise this question below and has never suggested that he wished not to be released. Smith did raise this question below. Since he has successfully served his period of mandatory parole the issue is moot and will not be reviewed in this case.

forth how the parole board is to impose these conditions. Rather, AS 33.16.060(b)(3) provides that "[t]he board shall adopt regulations ... governing procedures of the board."

By regulation, the department has established fourteen standard conditions of parole. 22 AAC 20.200(a). It has also set forth the general procedural framework for imposing supplemental conditions. Under 22 AAC 20.-270(b), "[a] prisoner for whom the board is considering imposing a supplemental or special condition of parole under 22 AAC 20.205 will be provided a *reasonable opportunity to comment* on the proposed condition before its imposition...." (Emphasis added.)[7] Prospective mandatory parolees are given notice of proposed conditions prior to their release. A request form filled out by an institutional probation officer suggesting special parole conditions is supplied to the inmate. If such a form is not used the inmate is given a copy of the conditions proposed by the board or a board member. Upon receiving notice of the proposed special conditions, the inmate is given ten days to comment on them.

Under 22 AAC 20.205 any member of the parole board may impose supplemental conditions of parole.[8] Supplemental conditions must bear a reasonable relationship to the parolee's offense and behavior. Thus, 22 AAC 20.205(a) gives the board, or an individual member, discretion to impose any supplemental condition "that reasonably relates to the parolee's offense, prior record, prior behavior, current circumstances, or perceived

risk to the community." Once conditions of parole are set, an inmate or a parolee may request a modification of the conditions. 22 AAC 20.215. Such requests are made in writing and decided by the board on the record without an interview of the parolee. The board must decide such cases within forty-five days after receipt of the request. The board's decision must be in writing and must be accompanied by the reason for the decision. 22 AAC 20.215(3) and (4). The board may order a formal hearing conducted by a hearing officer "if the change in parole conditions warrants it." 22 AAC 20.215(d).

Bynum argues that (1) the inmate should be given notice of the proposed conditions 120 days before the date of release and that the notice should include a statement of the reasons and the evidentiary basis for each condition, (2) the inmate should be given a meaningful opportunity to be heard after receiving notice of the proposed conditions, including at least fifteen days within which to respond, (3) the board should be required to issue a written decision listing the conditions that will be imposed and stating the basis for its decision, and (4) a hearing should be held if the conditions proposed are intended to restrict or impinge upon constitutional rights.

Bynum presents his argument in the abstract. He seems to assume that he has the right to raise hypothetical due process violations which might occur in some cases but did not occur in his case. He lacks standing to do this.[9] Thus our primary focus is on what happened to Bynum, not what

---

7. *See also* 22 AAC 20.205(a), which states:
 In addition to the standard conditions of parole set out in 22 AAC 20.200, the board will, in its discretion, impose any supplemental condition that reasonably relates to the parolee's offense, prior record, prior behavior, current circumstances, or perceived risk to the community. Absent an emergency situation, imposition of supplemental conditions will not occur until the prisoner/parolee has had an opportunity to comment upon the proposed supplemental conditions.

8. 22 AAC 20.205(b) provides: "Authority for imposition of supplemental conditions is delegated to any member of the board."

9. The overbreadth doctrine may give one standing to challenge the constitutionality of a statute which is not unconstitutional as applied, but may

be unconstitutional in some cases. *See Holton v. State*, 602 P.2d 1228, 1232–34 (Alaska 1979); *Anderson v. State*, 562 P.2d 351 (Alaska 1977). However, application of the doctrine is available only in the area of free speech. *See Anderson*, 562 P.2d at 355 (stating that overbreadth analysis is generally available only to challenge statutes which arguably chill the exercise of first amendment rights); *M.O.W. v. State*, 645 P.2d 1229, 1233 (Alaska 1982) (stating that overbreadth doctrine has never been extended to one who asserts a chilling effect on conduct protected only by right to privacy). Since Bynum's challenge does not implicate his right to free speech, he does not have standing to challenge hypothetical applications of the parole procedures.

might happen. We now address each of his four arguments concerning due process.

### 1. Notice of Proposed Supplemental Conditions

■ Due process traditionally entails a requirement of reasonable notice. One hundred twenty days advance notice of proposed parole conditions is certainly reasonable, as are many shorter periods. Bynum in fact received 120 days advance notice. Thus no due process violation occurred concerning the length of the notice.

■ Bynum also argues that the State should be required to include a statement of reasons for each proposed condition and a statement of the evidence to be relied upon. However, he does not argue that he was prejudiced by the State's failure to provide such information. Although a statement of reasons may help an inmate formulate a written response in some cases, it is not generally necessary to satisfy due process requirements. In addition, the evidence available to the board is available to the inmate. *See* 22 AAC 05.095(b), (h). Like the board, the inmate can review the record which will be before the board and argue that it does not support imposing certain challenged parole conditions. A requirement that the notice specify the evidence which supports proposed special conditions would require additional work for State corrections officials and provide little, if any, additional benefit for the inmate.

### 2. Opportunity to be Heard

Bynum's second request is that inmates be given a meaningful opportunity to be heard. Bynum does not argue under this point that a meaningful opportunity to be heard includes an evidentiary hearing. He treats that contention separately. *See infra* point 4. Under the present heading he contends that the inmate should have the opportunity to present evidence to either correct inaccuracies in his file or demonstrate that there is no basis for imposing a given condition of parole. He also contends that the inmate should be given fifteen rather than ten days within which to respond.

■ The regulations provide that when the board is considering imposing special conditions, the inmate will be given "a reasonable opportunity to comment on the proposed condition before its imposition." 22 AAC 20.270(b). We construe this to mean that the inmate will be permitted to submit written material, including the statements of others, in an attempt to correct errors in his records, respond to concerns implicit in the notice of proposed conditions and otherwise support his position. These procedures afford the inmate an opportunity to be heard and to represent his interests. That is all that due process requires. *Mathews v. Eldridge,* 424 U.S. at 348, 96 S.Ct. at 909; *Keyes v. Humana Hosp,* 750 P.2d at 353 ("The crux of due process is an opportunity to be heard and the right to adequately represent one's interests."). Bynum does not claim that he was prevented from making any such submissions.

■ Bynum also contends that due process requires at a minimum fifteen days within which to object to proposed conditions rather than the ten days which he was given. In the abstract, this argument may be correct, especially if the inmate intends to file extensive opposition in an effort to correct mistakes in the record. Such an effort could easily take more than ten days given the restrictions placed on prisoners. However, Bynum filed his opposition within four days of receiving notice of the proposed conditions, did not ask for additional time to submit more material, and does not identify any manner in which he was prejudiced by the ten-day period. Thus his claim that his due process rights were violated by an unduly short response period was correctly rejected.

### 3. Written Decision of the Board

■ Bynum argues that in order to preclude the possibility of arbitrary or mistaken decisions by the board, it is necessary for the board to provide the inmate with a final written decision listing the imposed conditions and stating the basis for its decision. Under 22 AAC 20.205, supplemental conditions must reasonably relate "to the parolee's offense, prior record, prior behavior, current circumstances, or perceived risk to the community."

We have ruled in a broad variety of administrative adjudications that the decision mak-

er should identify the reasons for his decision. We reviewed the law on this subject in *City of Nome v. Catholic Bishop of Northern Alaska,* 707 P.2d 870, 875 (Alaska 1985):

> Even absent a statutory duty to make findings, an agency that makes an adjudicative decision must articulate its reasons. *See Kenai Peninsula Borough v. Ryherd,* 628 P.2d 557, 562 (Alaska 1981) (requiring findings in formal adjudications); *Fields v. Kodiak City Council,* 628 P.2d 927, 933 (Alaska 1981) (requiring findings in informal adjudications). Such findings
>
>> facilitate judicial review, insure careful administrative deliberation, assist the parties in preparing for review, and restrain agencies within the bounds of their jurisdiction.
>
> *Fields,* 628 P.2d at 932 (quoting *Mobile Oil Corp. v. Local Boundary Comm'n,* 518 P.2d 92, 97 n. 11 (Alaska 1974)).

The reasons for requiring decisional grounds to be expressed are applicable to decisions of the parole board concerning challenged conditions of parole. As noted, supplemental conditions must bear a reasonable relationship "to the parolee's offense, prior record, prior behavior, current circumstances or perceived risk to the community." 22 AAC 20.205(a). Requiring a statement of reasons will focus the board's attention on the need for this relationship and, using the terms of *Mathews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903, reduce "the risk of an erroneous deprivation of [the parolee's] interest." Reasons need not be expressed with formality, however, thus this requirement should not prove to be unduly burdensome. In this case the expression of reasons by the individual parole board member who imposed the supplemental conditions after reviewing Bynum's comments, are, in form, minimally sufficient.[10]

### 4. Hearing on Conditions Restricting Constitutional Rights

 Finally, Bynum argues that if the proposed supplemental conditions "are in-

tended to restrict or impinge upon [an inmate's] constitutional rights," a hearing must be provided. At least two of the special conditions imposed on Bynum implicate constitutional rights: submission to searches for drugs and for alcohol. Bynum cites *Roman v. State,* 570 P.2d 1235 (Alaska 1977), to support his argument that due process requires a hearing prior to the imposition of these conditions.

In *Roman,* we recognized that conditioning release on consent to searches is "consistent with the goal of rehabilitation and necessary for the proper functioning of the parole system." *Id.* at 1242. However, we also stated that a search condition could be imposed only by the parole board and only after the parolee has an opportunity to be heard. *Id.* at 1244. The procedure followed in the present case meets both of the foregoing requirements. The parole board approved all of the search conditions imposed on Bynum. Additionally, Bynum was given the opportunity to object to each of the proposed conditions and state the reasons for his objections. Bynum does not present any specific arguments why these procedures did not afford the process required by *Roman.*[11]

Based on the foregoing we conclude that the procedures employed to impose special parole conditions on Bynum satisfied due process requirements. Bynum was given notice of the proposed conditions, he had an opportunity to make his objections to them known and to correct any mistaken facts on which they were based, and the board member who imposed the conditions explained his reasons for rejecting Bynum's objections. No more is required.

B. *Is 22 AAC 20.200, the regulation which imposes fourteen standard conditions of parole, inconsistent with AS 33.16.150 which mandates one standard condition, and authorizes the board to require other conditions?*

 Bynum argues that 22 AAC 20.200 conflicts with the statute which autho-

---

10. *See, supra* note 4.

11. *Roman* does not mandate an in-person hearing to review special parole conditions. Rather, recognizing that a hearing for discretionary parolees is routinely provided, we stated that the

hearing could serve the purpose of fulfilling a discretionary parolee's right to be heard on intrusive parole conditions. *Roman,* 570 P.2d at 1244 n. 28.

rizes it, AS 33.16.150. An agency's regulations must be consistent with the authorizing statute. AS 44.62.030; *Vail v. Coffman Engineers, Inc.*, 778 P.2d 211, 214 (Alaska 1989). Alaska Statute 33.16.150(a) states that "[a]s a condition of parole, a prisoner released on discretionary or mandatory parole shall refrain from conduct punishable by imprisonment under state or federal law or municipal ordinance." This requirement is mandatory for all parolees. In addition, AS 33.16.150(b) lists seventeen additional conditions that the board *may* require of a parolee. The board has adopted regulations which require that all parolees follow eight of these conditions. 22 AAC 20.200. Bynum argues that the board's adoption of 22 AAC 20.200 is inconsistent with AS 33.16.150 because the regulation replaces the discretion intended by the statute with a *per se* rule.

Administrative law doctrine lends support to the regulation at issue. If an administrative agency is given discretion to dole out a privilege or impose a restriction, the agency may generally restrict its own discretion by formulating mandatory rules. *Fook Hong Mak v. Immigration & Naturalization Serv.*, 435 F.2d 728, 730 (2d Cir.1970); *see also* 2 Kenneth C. Davis, *Administrative Law Treatise* § 8:8, at 192–96 (2d ed. 1979). The agency need not engage in case-by-case review if it can formulate *per se* rules that are reasonable and consistent with the statutory framework. Davis, *supra*, § 8:8, at 192–93. The only limitation on the agency in adopting such rules is if individualized consideration is mandated by the text or purpose of the statutory scheme. *Id.* at 192 ("[R]ules may preclude discretion as long as they do not cut off needed individualizing.").

Nothing in AS 33.16.150 prohibits the board from mandating by regulation some of the statutory conditions listed in section 33.16.150(b). Neither the language nor the purpose of the statute suggests that individualized consideration of each of the 33.16.150(b) conditions is required in every case. Further, the board retains the discretion not to

impose or to modify any conditions at any time. 22 AAC 20.200(c); 22 AAC 20.225. We conclude, therefore, that 22 AAC 20.200 is not in conflict with AS 33.16.150.

C. *Are mandatory parolees denied equal protection of the laws because they are not permitted to appear before the parole board prior to their release while discretionary parolees are granted the right of an in-person appearance?*

Under AS 33.16.130(b), an inmate is entitled to an in-person hearing regarding his application for discretionary parole. Alaska law does not provide a comparable hearing for an inmate eligible for mandatory parole. Bynum argues that this different treatment denies the mandatory parolee equal protection under the Alaska Constitution.

We have held that "[e]qual protection requires that those similarly situated be treated equally . . . ." *Ketchikan Gateway Borough v. Breed*, 639 P.2d 995, 995–96 (Alaska 1981). In the present case, discretionary and mandatory parolees are not "similarly situated" with respect to the need for a personal appearance hearing. Discretionary parolees are not assured of release upon eligibility for discretionary parole. If the parolee is eligible for discretionary parole, the "board *may* authorize release" after consideration of certain factors. AS 33.16.100(a) (emphasis added). The purpose of the parole hearing is to allow the discretionary parolee an opportunity to persuade the board that he should be released on parole. The hearing is not provided to consider and review conditions of parole, but rather to determine if the prisoner meets the criteria for discretionary parole under AS 33.16.100(a). If the prisoner meets the criteria, the board may authorize his release prior to the expiration of his sentence.

In contrast, the mandatory parolee must be released on parole at the end of his sentence less time deducted for good conduct.[12]

---

12. An inmate is provided a hearing and other procedural safeguards if the State attempts to reduce the amount of an inmate's accumulated good time due to the inmate's alleged miscon-

duct. *See* 22 AAC 05.400 *et seq.* Thus, the mandatory parolee does receive a hearing for any action affecting the single factor—good time—that determines whether he will receive

AS 33.20.030. In the case of mandatory parole, there is nothing for the board to consider with regard to *whether* a mandatory parolee should be released. Thus, the purpose of the hearing Bynum requests is fundamentally different from that provided to those eligible for discretionary parole. For this reason, the discretionary and mandatory parolee are not similarly situated and, thus, Bynum's equal protection argument must fail.

D. *Does the placement of probation officers in the executive rather than the judicial branch of government violate the separation of powers doctrine?*

Smith's argument on this issue is that probation officers are labeled "officers of the superior court" in AS 33.05.030; AS 33.-05.020 commits the hiring, training, and supervision of probation officers to the Commissioner of the Department of Corrections, an official of the executive branch; and, thus, the legislature has violated the separation of powers doctrine by granting an official of the executive branch control over officials of the judicial branch.

As the State points out, however, Smith's argument does not withstand scrutiny. The mere label "officer of the court" does not necessarily make probation officers core

members of the judicial branch of government. Rather, as we stated in *Bradner v. Hammond,* 553 P.2d 1, 6 (Alaska 1976), the question is whether the government action involved is a legislative, executive or judicial "function."

The question whether probation officers should be included within the judicial rather than the executive branch of government is reasonably debatable. In some states and in the federal system probation officers are part of the judicial branch, in others they are part of the executive branch. *See* 18 U.S.C. § 3602 (1985); Ariz.Rev.Stat.Ann. § 12–251 (1992) (probation officers part of judicial branch); Cal.Penal Code § 1203.6 (West 1992) (same); Idaho Code § 20–214 (1993) (Board of Corrections has power and authority to employ and fix duties of probation officers). The probation function, in fact, appears to be one of those areas of shared responsibilities among the executive and judicial branches. *See e.g., Mistretta v. United States,* 488 U.S. 361, 390, 109 S.Ct. 647, 664, 102 L.Ed.2d 714 (1989) (stating that "the sentencing function long has been a peculiarly shared responsibility among the Branches of Government and has never been thought of as the exclusive constitutional province of any one Branch").[13] The Alaska Constitution

---

mandatory parole. In this sense, both the discretionary and mandatory parolee are treated similarly.

**13.** In the amicus curiae brief for the United States Sentencing Commission in *Mistretta v. United States,* Professor Paul Bator discussed the separation of powers with respect to sentencing. Professor Bator stated:

> [I]t is critically important to remember that the Constitution does not … assign the sentencing function to the exclusive jurisdiction of any branch. Indeed, deciding what punishment fits the crime is a paradigm example of a responsibility that has, historically, been shared among the three branches.… Sentencing is thus preeminently a field where interbranch cooperation and sharing of responsibility are appropriate, and where rules must therefore "be fixed according to common sense and the inherent necessities of the governmental co-ordination." quoting *Hampton & Company v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 351, 72 L.Ed. 624 (1928).

Paul M. Bator, *The Constitution as Architecture: Legislative and Administrative Courts Under Article III,* 65 Ind.L.J. 233, 274 (1990) (appendix reproducing portions of the Amicus Curiae Brief

of the United States Sentencing Commission as filed in *Mistretta v. United States* ). Professor Bator pointed out the effect of this approach on the administration of probation and parole:

> Currently, the administration of probation is the responsibility of the judicial branch whereas the administration of parole is the responsibility of the executive branch. Yet, functionally, both probation and parole are forms of supervised release that serve as alternatives to incarceration. There is no reason to think that the current allocation of responsibility is constitutionally compelled. In fact there is considerable interplay between probation officers and the parole authorities.
>
> Because probation officers are "peace officers" and have "law enforcement" powers such as the power to arrest, the placement of the probation service in the judicial branch and the courts' powers to supervise (and remove) probation officers, would become constitutionally suspect under [a] rigid version of separation of powers.

*Id.* (citations omitted).

does not assign probation officers to the exclusive jurisdiction of either the executive or the judicial branch of government. It follows that the Alaska Legislature's decision to place probation officers in the executive branch does not violate the separation of powers doctrine.

### III.

For the reasons stated above, the decision of the superior court is AFFIRMED.