*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DENNIS O., | ) |
| | ) Supreme Court No. S-15802 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-09-01278 CI |
| v. | ) |
| | ) O P I N I O N |
| STEPHANIE O., | ) |
| | ) No. 7161 – March 17, 2017 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Dennis O., pro se, Palmer, Appellant. Stephanie O., pro se, Big Lake, Appellee. Nikole Nelson, James J. Davis, Jr., Hollis Handler, and Sydney Tarzwell, Anchorage, for Amicus Curiae Alaska Legal Services Corporation. Christine M. Pate, Sitka, for Amicus Curiae Alaska Network on Domestic Violence and Sexual Assault. Gregory P. Razo, Anchorage, for Amicus Curiae Alaska Native Justice Center. Mark W. Regan, Anchorage, for Amicus Curiae The Disability Law Center of Alaska. Thomas M. Daniel, Perkins Coie LLP, Anchorage, Theodore A. Howard, Wiley Rein LLP, Washington, D.C., and Paulette Brown, American Bar Association, Chicago, Illinois, for Amicus Curiae American Bar Association. Brooke Berens, Assistant Public Advocate, Chad Holt, Deputy Director, and Richard Allen, Director, Anchorage, for Amicus Curiae Office of Public Advocacy.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

WINFREE, Justice.

# I.     INTRODUCTION

A father requested court-appointed counsel in a child custody modification proceeding after learning that the mother had hired a private attorney. The court denied the request. The father — supported in part by several amici curiae — claims that the denial violated his due process and equal protection rights under the Alaska Constitution. We disagree: We decline to expand our prior decisions by mandating court-appointed counsel for every indigent parent in a child custody proceeding when the opposing parent is represented by private counsel, and we conclude that on the facts of this case the father's constitutional rights were not violated by the denial of court-appointed counsel.

# II.    FACTS AND PROCEEDINGS

Dennis and Stephanie O. divorced in 2011 and were awarded joint legal custody of their four children.[1] They shared physical custody of their three younger children, and Stephanie was granted primary physical custody of their oldest daughter.

In January 2014 Stephanie moved to modify the original custody order, seeking sole legal and primary physical custody of all four children. In an affidavit supporting the motion Stephanie alleged that in 2013 Dennis had sexually assaulted her and later trespassed in her home. Those allegations were the principal basis of Stephanie's claim of a substantial change of circumstances warranting a custody modification, and they also had been the basis of a long-term domestic violence

---

[1]     We use an initial in lieu of the parties' last name to protect the family's privacy.

protective order granted two months earlier. The superior court judge presiding over the divorce proceeding referred the matter to a family court master.[2]

Although Stephanie initiated the proceedings while self-represented, she secured an attorney for the limited purpose of representing her during the custody modification hearing before the master. In response Dennis requested that the master appoint him counsel for the hearing, citing our decisions in *Flores v. Flores*,[3] *In re K.L.J.*,[4] and *Reynolds v. Kimmons*[5] and quoting Alaska Administrative Rule 12(e).[6] He argued that those authorities supported appointing him counsel based on his indigence and the risk of losing custody of his children, and he expressed specific concern about the risk of self-incrimination due to Stephanie's criminal allegations against him.

At the hearing and in a separate written order the master denied Dennis's motion for appointment of counsel. The master noted at the hearing that he was not aware "of any authority that mandates that the [c]ourt appoints counsel for all indigent parents in all custody cases." When Dennis later expressed frustration about that decision during the hearing, the master responded:

---

[2] *See* Alaska R. Civ. P. 53(b) (allowing referral of issues to special masters).

[3] 598 P.2d 893, 895-96 (Alaska 1979) (holding that due process requires appointment of counsel to every indigent parent in custody case when state agency represents opposing parent).

[4] 813 P.2d 276, 282 n.7 (Alaska 1991) (holding that due process requires appointment of counsel to every indigent parent defending against parental rights termination).

[5] 569 P.2d 799, 803 (Alaska 1977) (holding that due process requires appointment of counsel to every indigent parent in paternity suit prosecuted by state).

[6] Alaska Admin. R. 12(e)(1) ("If the court determines that counsel . . . is required by law or rule, the court shall appoint an attorney . . . .").

[F]rankly, if I thought that the [L]egislature and the Supreme Court had the intent and ability to provide legal counsel for you right now, I would order it in a heartbeat. . . . But there simply is not the authority for it.

. . . .

I think it's very clear that I'm not authorized to do that.

During the hearing Dennis cited cases and statutes supporting his various legal positions, and he impeached Stephanie's credibility. But the hearing involved some complex legal issues, and the master observed that Dennis occasionally became frustrated at not having the assistance of an attorney. The master accommodated Dennis by structuring the proceedings to make them easier for him, frequently explaining legal issues, and even requiring Stephanie's attorney to warn Dennis when he was in danger of opening the door to cross examination about the criminal accusations.

In a November 2014 Report and Order the master determined there was a substantial change in circumstances warranting modification of custody.[7] The master found by a preponderance of the evidence that Dennis had sexually assaulted Stephanie in August 2013, committed criminal trespass after hiding in Stephanie's garage and refusing to leave in September 2013, and violated the domestic violence protective order in September 2013. The master's sexual assault and trespass findings were based on Stephanie's testimony about the incidents. Because Dennis separately had been criminally convicted of violating the protective order, the master determined collateral estoppel applied to that incident.

The master also found that "Dennis presented compelling, credible testimony" regarding two instances of domestic violence Stephanie had committed in

---

[7]    *See* Alaska R. Civ. P. 53(d)(1) ("The master shall prepare a report upon the matters submitted to the master by the order of reference and, if required to make findings of fact and conclusions of law, the master shall set them forth in the report.").

1993 and 2003. Because both parents had committed multiple incidents of domestic violence, the master applied AS 25.24.150(i) and found Stephanie "far less likely to continue to perpetrate domestic violence."[8] That, in addition to the seriousness of the sexual assault, led the master to recommend awarding Stephanie sole legal and primary physical custody of the children. Finally, the master recommended awarding Dennis supervised visitation twice per week and unsupervised visitation upon completion of a batterers' intervention program and a parenting education program,[9] despite Dennis's statements rejecting visitation absent some form of custody.

The superior court adopted the master's recommendations and awarded Stephanie primary physical and sole legal custody of the children.[10] Dennis appeals only the denial of his motion to appoint counsel to represent him at the hearing. Both Dennis and Stephanie represent themselves on appeal, and we have accepted three amicus briefs from: (1) jointly Alaska Legal Services Corporation, Alaska Native Justice Center, Alaska Network on Domestic Violence and Sexual Assault, and The Disability Law Center of Alaska (collectively Agency amici); (2) the Office of Public Advocacy (OPA); and (3) the American Bar Association (ABA).

Dennis makes two arguments on appeal: (1) that the denial of appointed counsel violated his due process rights under the Alaska Constitution and (2) that the

---

[8]     AS 25.24.150(i) provides that "[i]f the court finds that both parents have a history of perpetrating domestic violence" the court may "award sole legal and physical custody to the parent who is less likely to continue to perpetrate the violence and require that the custodial parent complete a treatment program."

[9]     *See* AS 25.24.150(j) (permitting "only supervised visitation by [a] parent" who has a history of domestic violence, "conditioned on that parent's . . . successfully completing an intervention program for batterers, and a parenting education program").

[10]     Because the oldest daughter by then had turned 18, the modification involved only the three younger children.

statutory mandate to appoint counsel to an indigent parent if the other parent is represented by a state agency but not by private counsel violates the Alaska Constitution's equal protection clause.[11] Agency amici and the ABA also argue that the Alaska Constitution's due process clause requires court-appointed counsel for every indigent parent when the other parent in a custody case has hired private counsel.

## III. STANDARD OF REVIEW

We review constitutional questions, including due process and equal protection, de novo,[12] and we "will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

## IV. DISCUSSION

We conclude that due process does not mandate court-appointed counsel for all indigent parents in Dennis's situation and that neither due process nor equal protection requires reversal of the decision not to appoint Dennis counsel.[14]

---

[11] We assume that Dennis is indigent for purposes of this appeal.

[12] *del Rosario v. Clare*, 378 P.3d 380, 383 (Alaska 2016) (citing *Grimmett v. Univ. of Alaska*, 303 P.3d 482, 487 (Alaska 2013)) (due process); *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007) (citing *Alaska Civil Liberties Union v. State*, 122 P.3d 781, 785 (Alaska 2005)) (equal protection). Although we have previously stated that the decision to appoint counsel in a civil case is a procedural decision reviewed for an abuse of discretion, the constitutional nature of these due process decisions makes de novo review the appropriate standard. *Cf. Richardson v. Municipality of Anchorage*, 360 P.3d 79, 84 (Alaska 2015); *Barber v. Schmidt*, 354 P.3d 158, 160 (Alaska 2015); *Bustamante v. Alaska Workers' Comp. Bd.*, 59 P.3d 270, 272 (Alaska 2002); *Midgett v. Cook Inlet Pre-Trial Facility*, 53 P.3d 1105, 1109 (Alaska 2002).

[13] *Jerry B. v. Sally B.*, 377 P.3d 916, 924-25 (Alaska 2016) (quoting *Garibay v. State, Dep't of Admin., Div. of Motor Vehicles*, 341 P.3d 446, 448 (Alaska 2014)).

[14] Although the superior court adopted the master's custody
(continued...)

### A. Due Process Does Not Require Appointment Of Counsel.

"The crux of due process is [having the] opportunity to be heard and the right to adequately represent one's interests."[15] That right stems directly from the Alaska Constitution, which states that "[n]o person shall be deprived of life, liberty, or property, without due process of law."[16] "A valid constitutional challenge based on due process requires 'state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection.' "[17]

Due process under the Alaska Constitution is "flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the

---

[14] (...continued)
recommendations, neither the master's report nor the superior court's final order mentioned Dennis's request for appointed counsel or the master's denial of that request. Neither party objected to the master's findings. *See* Alaska R. Civ. P. 53(d)(2) ("Within 10 days after being served with notice of the filing of the report any party may serve written objections . . . ."). Because the issue has not been raised we express no opinion whether the superior court should have addressed the master's denial of Dennis's motion to appoint counsel. *Cf.* Alaska R. Civ. P. 53(b) ("[T]he master has and shall exercise the power to regulate all proceedings in every hearing before the master and to do all acts and take all measures necessary or proper for the efficient performance of the master's duties . . . ."). Any error would be harmless in light of our de novo review of the master's decision.

[15] *In re K.L.J.*, 813 P.2d 276, 279 (Alaska 1991) (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980)).

[16] Alaska Const. art. I, § 7.

[17] *Ostrow v. Higgins*, 722 P.2d 936, 942 (Alaska 1986) (quoting *Nichols v. Eckert*, 504 P.2d 1359, 1362 (Alaska 1973)); *see also In re K.L.J.*, 813 P.2d at 283 (holding minimal state involvement — where private adoption was "state mechanism," and where state issued new birth certificate, maintained records, and enforced adoption decree — was sufficient to trigger due process where indigent, disabled father faced termination of his parental rights).

proceeding."[18] To determine what process is due, we have adopted the three-factor *Mathews* balancing test:[19]

> [1] the private interest affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and . . . [3] the government's interest, including the fiscal and administrative burdens that additional or substitute procedural requirements would entail.[20]

We have held that due process requires appointment of counsel to an indigent parent if the proceeding could lead to a criminal charge or the deprivation of liberty.[21] We also have extended that due process right to three specific classes of indigent parents.

First, in *Flores v. Flores* we held that indigent parents in private child custody proceedings whose opponents were represented by a state agency were, as a

---

[18]     *In re K.L.J.*, 813 P.2d at 278 (quoting *Otton v. Zaborac*, 525 P.2d 537, 539 (Alaska 1974)).

[19]     *Id.* at 279 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[20]     *Id.* (quoting *Keyes v. Humana Hosp. Alaska, Inc.*, 750 P.2d 343, 353 (Alaska 1988)).

[21]     *See Reynolds v. Kimmons*, 569 P.2d 799, 801-02 (Alaska 1977) (holding that due process required appointed counsel in paternity suit prosecuted by state, in part because "an indirect outcome of this suit could be a criminal charge"); *Otton*, 525 P.2d at 539 (holding that due process required appointed counsel in contempt proceeding for nonsupport because "[t]he potential deprivation of liberty in nonsupport contempt proceedings is as serious a matter as the restraint of liberty possible in criminal, juvenile, and criminal contempt proceedings").

class, entitled to appointed counsel.[22] That case involved a parent represented by Alaska Legal Services Corporation and a parent living in California who was unable to travel to Alaska due to indigence.[23] We held that the indigent parent's private interest, "the right to direct the upbringing of one's child," was high.[24] Further, the risk of erroneous deprivation of that parent's interest was grave due to the unfairness of having a state agency representing the other parent.[25] We noted that "[a]lthough the legal issues in a given case may not be complex," custody determinations are difficult due to their "emotional nature."[26] We determined that due process demanded the appointment of counsel for *all* parents in that situation, but the facts of that case were particularly compelling.[27] Unable to travel to Alaska, the indigent parent would have defaulted and effectively lost all parental rights.[28]

Second, in *V.F. v. State* we determined that due process required appointment of counsel for indigent parents, as a class, in Child in Need of Aid

---

[22]    598 P.2d 893, 895-96 (Alaska 1979).

[23]    *Id.* at 894 & n.4.

[24]    *Id.* at 895.

[25]    *Id.* at 895-96.

[26]    *Id.* at 896.

[27]    *Id.*

[28]    *Id.* at 895 n.8, 896.

proceedings brought by the state to terminate parental rights.[29] We noted that a parent's private interest was even higher in a termination case than in a custody proceeding.[30]

Finally, we extended that latter holding to nonconsensual private adoptions — when a parent's parental rights are terminated to allow the adoption to proceed[31] — in *In re K.L.J.*[32] We stated that the private interest of the indigent parent, with termination of parental rights at stake, was "of the highest magnitude."[33] The state's interests in the children and in "an accurate and just decision" outweighed its "legitimate interest in avoiding the cost of appointed counsel and its consequent lengthening of judicial procedures."[34] The benefits of an attorney would have been significant in that case.[35] It involved "complex legal questions"; the superior court made an important legal error; the indigent parent failed at effectively presenting evidence, cross examining witnesses, and testifying; the indigent parent's physical disability made communication with the court very difficult; and indigency prevented him from appearing in person.[36] We recognized a right to counsel for all indigent parents "defending against the

---

[29]     666 P.2d 42, 45 (Alaska 1983).

[30]     *Id.*

[31]     *See* AS 25.23.130(a) ("A final decree of adoption . . . terminate[s] all legal relationships between the adopted person and the natural parents . . . ."); AS 25.23.050 (permitting adoption in certain cases without parent's consent).

[32]     813 P.2d 276, 283-84 (Alaska 1991).

[33]     *Id.* at 279.

[34]     *Id.* at 280.

[35]     *Id.* at 280-81.

[36]     *Id.* at 281-82.

termination of their parental rights," even though the facts of that case were "compelling enough by themselves to indicate a violation" of due process.[37]

### 1. Due process for parents as a class

With the foregoing cases in mind, we first examine the assertion by Agency amici and the ABA that due process requires the appointment of counsel for every indigent parent in a custody case when the opposing parent is represented by private counsel.

The private interests of parents in these custody cases are weighty, but they do not rise to the level considered in the parental rights termination cases. We observe that "[t]he right to the care and custody of one's own child is a fundamental right recognized by both the federal and state constitutions"[38] and that it "clearly falls within the protections of the due process clause and should be accorded significant weight."[39] But custody hearings do not threaten termination of parental rights. We recognized in *V.F.* that "a proceeding for the termination of parental rights affects a parent's right to direct the upbringing of . . . [a] child even more than does a private child custody proceeding."[40] And as we noted in *In re K.L.J.*, the risk of termination creates an interest

---

[37]    *Id.* at 282 nn.6-7 (emphasis omitted).

[38]    *J.M.R. v. S.T.R.*, 15 P.3d 253, 257 (Alaska 2001) (citing *In re K.L.J.*, 813 P.2d at 279).

[39]    *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811, 831 (Alaska 2003); *see also Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979) (holding in custody case that "[t]he interest at stake . . . is one of the most basic of all civil liberties, the right to direct the upbringing of one's child").

[40]    666 P.2d 42, 45 (Alaska 1983).

"of the highest magnitude."[41] Although custody is a significant private interest, it does not reach that magnitude.

Similarly, the risk of erroneous deprivation of these parents' rights is less significant than in those cases requiring appointed counsel. We readily acknowledge the challenges of self-representation in custody cases; such cases are difficult and emotional. We stated in *Flores*:

> [T]he crucial determination of what will be best for the child can be an exceedingly difficult one as it requires a delicate process of balancing many complex and competing considerations that are unique to every case. A parent who is without the aid of counsel in marshalling and presenting [favorable] arguments . . . will be at a decided and frequently decisive disadvantage which becomes even more apparent when one considers the emotional nature of child custody disputes, and the fact that all of the principals are likely to be distraught.[42]

Many parents involved in custody disputes surely have felt the same way at the close of a difficult hearing.

We are not blind to the advantages that a parent represented by any counsel — private or public — has over a self-represented parent. But that advantage does not necessarily violate a self-represented parent's due process rights. In *Flores* we stated that "[t]his disadvantage is constitutionally impermissible where the other parent has an attorney supplied by a public agency."[43] If one parent enjoys the benefit of representation by a state agency, we held that "[f]airness alone dictates that the [other

---

[41] 813 P.2d at 279.

[42] 598 P.2d at 896.

[43] *Id.*

parent] should be entitled to a similar advantage."[44] If one parent is represented by private counsel, however, that advantage does not raise the same "constitutionally impermissible" fairness concerns.[45]

Procedural safeguards, including the Family Law Self-Help Center and informal resolution programs, also reduce the risk of erroneous deprivation for these parents. The court may appoint a custody investigator, a guardian ad litem, or an attorney for a child.[46] And judges have experience providing procedural assistance to self-represented parties. Because these cases do not involve the inherent unfairness of a state agency representing one parent, and because of the ways that the judicial system assists self-represented parents in custody cases, the probable value of court-appointed counsel here is lower than in cases where we have mandated court-appointed counsel.

Finally, in any due process case involving families the government has multiple important interests at stake. "First and foremost, the state has an interest in the children."[47] On one hand appointment of counsel can lead to more "accurate and just results," and therefore better outcomes for children.[48] On the other hand, to the extent that appointment of counsel causes increased conflict between parents and the "lengthening of judicial procedures," the state's interest in the children weighs against appointment.[49] Additionally "the state undoubtedly has a legitimate interest in avoiding

---

[44]     *Id.* at 895.

[45]     *Id.* at 896.

[46]     *See* AS 25.24.310; Alaska R. Civ. P. 90.6; Alaska R. Civ. P. 90.7.

[47]     *In re K.L.J.*, 813 P.2d 276, 279 (Alaska 1991).

[48]     *Id.* at 280 (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 28 (1981)).

[49]     *Id.*

the cost of appointed counsel,"[50] and — based on OPA's experience as statutory *Flores* counsel[51] — mandating appointment of counsel to this class of parents could potentially cost several million dollars annually. Although the state's and parents' interests partially coincide, the "fiscal and administrative burdens" here are significant enough that the government interest weighs against appointing counsel to this class of parents.[52]

On balance self-represented indigent parents facing opposing parents represented by private counsel are not, as a class, deprived of due process rights solely because they do not have counsel. The private interest at stake — custody of one's children — supports appointment of counsel.[53] But unlike termination cases the interest here is not "of the highest magnitude."[54] And although counsel could protect the interests of indigent parents, the risk of erroneous deprivation does not categorically reach an unconstitutional level.[55] Finally, the substantial potential cost to the state outweighs the benefit of appointing counsel to all such parents.

---

[50]     *Id.*

[51]     *See* AS 44.21.410(a)(4) (requiring OPA to represent indigent parent in custody case when opposing parent is represented by public agency).

[52]     *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)).

[53]     *See Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979).

[54]     *In re K.L.J.*, 813 P.2d at 279.

[55]     *See Flores*, 598 P.2d at 896 ("This disadvantage is constitutionally impermissible where the other parent has an attorney supplied by a public agency.").

### 2.     Due Process for Dennis

Having determined that these parents do not, as a class, require court-appointed counsel, we now apply the *Mathews* factors to Dennis's claim that he has an individual due process right to counsel.

#### a.     Private interest

In this case the custody modification hearing did not threaten to terminate Dennis's parental rights. And unlike in *Flores*, where "the distance between California and Alaska and the petitioner's indigency" meant that losing custody would "have the same consequences" as termination,[56] Stephanie and Dennis reside in nearby communities. Because this case involved only custody and would not have the effect of depriving Dennis of his parental rights, his interest here is not "of the highest magnitude."[57]

#### b.     Risk of erroneous deprivation

To determine the risk of erroneous deprivation on an individual basis, we "consider the likelihood that [the requested procedure] might alter the outcome."[58] That assessment "is not the same as determining whether any constitutional error was harmless, but more fundamentally considers" the effect of the request for counsel on the

---

[56]     *Id.* at 895 n.8.

[57]     *In re K.L.J.*, 813 P.2d at 279.

[58]     *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000).

parent's opportunity to present a case.[59] We first determine the hypothetical value of appointment of counsel, and then we review the record to confirm that determination.[60]

Flores and In re K.L.J. illustrate the types of risks that implicate due process concerns. In addition to the unfairness of a state agency representing the other parent, in Flores we noted that "a denial of the right to counsel will necessarily be fatal to the petitioner's cause, because she lacks the funds to come to Alaska and will therefore lose the custody proceeding by default."[61] Thus that parent's "right to be heard [would] truly be meaningless" without appointed counsel.[62] The risks in In re K.L.J. were similarly grave because the father's indigency "prohibited him from appearing in court" and his physical disability "affected his ability to communicate with the court" by telephone.[63]

The risks to Dennis's rights were less grave. As a self-represented litigant Dennis was unfamiliar with the rules of evidence and procedure, and like in many custody cases, representing himself likely was difficult and emotional.[64] Dennis was facing an opponent represented by counsel, who did not have those disadvantages.

---

[59]   *Id.* at 212-13.

[60]   *See id.*

[61]   598 P.2d at 896. We recognize that the specific facts of *Flores* and *In re K.L.J.* have less precedential value because we determined in each case that an entire class of indigent parents was entitled to appointed counsel. *See In re K.L.J.*, 813 P.2d at 282 n.6 ("Even if we were not to establish a bright line right to counsel, we would conclude that the facts here are compelling enough by themselves to indicate a violation of [the indigent parent's] procedural due process rights.").

[62]   *Flores*, 598 P.2d at 896.

[63]   813 P.2d at 282.

[64]   *See Flores*, 598 P.2d at 896.

Dennis was also concerned before the hearing that without a lawyer he would be unable to defend himself against Stephanie's criminal accusations and that those accusations would lead to a criminal charge.

Those risks, however, did not rise to an unconstitutional level. The assistance available to all self-represented parents was available to Dennis. The master was required to advise Dennis of proper procedures and to hold him to a relatively lenient standard.[65] Because Stephanie hired private counsel, the hearing did not involve the inherent unfairness of state assistance to one parent.[66] To the extent Dennis's concern about self-incrimination stemmed from his Fifth Amendment rights, those enjoy separate procedural protections and are not relevant to the risk of deprivation of custody. And even with criminal accusations looming, Dennis's risk of erroneous deprivation of his parental rights did not approach the risk found in situations like *Flores* and *In re K.L.J.*, where parents had virtually no way to defend themselves.[67] Unlike the parents in those cases Dennis had the opportunity to appear at the hearing, make his case, and testify if he desired.

This conclusion — that the probable value of appointing counsel was not sufficiently high — "is confirmed by our review of the record, and by [Dennis's] failure to identify any plausible way that [he] was prejudiced" at the hearing.[68] Dennis capably represented himself throughout the hearing. He appeared in person, presented evidence,

---

[65] *See Bush v. Elkins*, 342 P.3d 1245, 1253-54 (Alaska 2015) (discussing "affirmative duty [courts have] to advise self-represented litigants" (citing *Breck v. Ulmer*, 745 P.2d 66, 75 (Alaska 1987))).

[66] *See Flores*, 598 P.2d at 895.

[67] *See id.* at 896; *In re K.L.J.*, 813 P.2d at 281-82.

[68] *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 213 (Alaska 2000).

and cross examined Stephanie, impeaching her credibility. He also cautiously avoided admitting to any criminal actions.

Dennis nonetheless claims on appeal that the master unfairly directed him not to testify "about critical evidence necessary to making his case." Dennis also disputes the master's weighing of the testimony, claiming that if Stephanie's actions did not exhibit a "reckless disregard for the truth, it is hard . . . to imagine what does."[69] Dennis fails to explain, and we fail to see, how those claims of prejudice arise from Dennis's self-representation. Instead the record reflects that the master took every opportunity to safeguard Dennis, going so far as to order Stephanie's attorney to "[s]hout it right out" whenever Dennis's testimony might open the door to cross examination about the alleged sexual assault. The master explained the law, granted Dennis considerable latitude, and structured the proceedings in an effort to make them easier for Dennis. The master ultimately considered the evidence Dennis presented, weighing it against Stephanie's testimony, and found them both credible. The record confirms our conclusion that the risk of erroneous deprivation to Dennis did not require appointment of counsel.

---

[69] Dennis further argues that the master violated Alaska Code of Judicial Conduct Canon 3(B)(4), requiring a judge to be "patient, dignified, and courteous to litigants," by commenting on what he viewed as Dennis's immature behavior. This claim has no merit. *See Luker v. Sykes*, 357 P.3d 1191, 1199 (Alaska 2015) (holding that " 'expressions of impatience, dissatisfaction, annoyance and even anger, that are within the bounds of what imperfect men and women . . . sometimes display' do not establish bias or partiality" (alteration in original) (quoting *Kingery v. Barrett*, 249 P.3d 275, 286 n.43 (Alaska 2011))); *see also Crawford v. State*, 337 P.3d 4, 33 (Alaska App. 2014) (holding that under Alaska Code of Judicial Conduct Canon 3(B)(4) "judges generally are not required to remove themselves from a case simply because they have made remarks that are critical of, or even hostile to, an attorney or litigant" (citing *Hanson v. Hanson*, 36 P.3d 1181, 1183-87 (Alaska 2001))).

### c. State's interests

The state's interests in this case, the third *Mathews* factor, include an interest in the children[70] and an interest in avoiding the "fiscal and administrative burdens" of appointing Dennis counsel.[71] In addition to a probable cost of $5,000, appointing Dennis counsel would have caused further delays for a hearing that already had lasted longer than anticipated. This "lengthening of judicial procedures,"[72] an administrative burden that can negatively impact children, coupled with the likely fiscal cost, weighs against appointment of counsel in this case.

### d. Conclusion

We reiterate that the crux of due process is having a meaningful opportunity to be heard and represent one's interests.[73] Here Dennis was able to defend his interest in having custody of his children and no unique risks or challenges demanded appointment of counsel at state expense. For future cases we emphasize that the trial courts are guardians of due process; to determine whether due process requires appointment of counsel in a particular case, trial courts are required to engage in a prospective analysis, weighing the risks of erroneous deprivation and balancing the *Mathews* factors. If the particular facts of a case demonstrate that the parent would otherwise be deprived of a meaningful opportunity to be heard, procedural due process

---

[70]     *See In re K.L.J.*, 813 P.2d at 279.

[71]     *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)).

[72]     *In re K.L.J.*, 813 P.2d at 280.

[73]     *See id.* at 279 ("The crux of due process is opportunity to be heard and the right to adequately represent one's interests." (quoting *Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980))).

may require court appointment of counsel to a parent in a custody proceeding.[74] The facts of Dennis's case, however, did not rise to that level.

## B.    Equal Protection Does Not Require Appointment Of Counsel.

The Alaska Constitution guarantees "that all persons are equal and entitled to equal rights, opportunities, and protection under the law."[75] Equal protection claims raise the question "whether two groups of people who are treated differently are similarly situated and thus entitled to equal treatment."[76] We have taken two approaches to determining whether groups of people are similarly situated: a "shorthand" analysis, and a full, multi-step analysis.[77] Under either test the key issues are "which classes must be compared" and whether treating similarly situated classes differently is justified.[78] The shorthand analysis, used in "exceedingly clear" cases, allows us to "summarily conclude that two classes are not similarly situated,"[79] which "implies that the different legal treatment of the two classes is justified by the differences between the two classes."[80]

---

[74]    Alaska Admin. R. 12(e)(1) ("If the court determines that [appointment of] counsel . . . is required by law . . . the court *shall* appoint an attorney . . . ." (emphasis added)).

[75]    Alaska Const. art. I, § 1.

[76]    *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).

[77]    *Shepherd v. State, Dep't of Fish & Game*, 897 P.2d 33, 44 n.12 (Alaska 1995).

[78]    *Planned Parenthood of the Great Nw. v. State*, 375 P.3d 1122, 1135-36 (Alaska 2016) (citing *State v. Schmidt*, 323 P.3d 647, 660 (Alaska 2014)).

[79]    *Id.* at 1136 & n.81.

[80]    *Shepherd*, 897 P.2d at 44 n.12 (resident and nonresident users of fish and game not similarly situated); *see also Alaska Inter-Tribal Council v. State*, 110 P.3d 947,

(continued...)

Under the full analysis for closer cases we apply "a flexible three-step sliding-scale" to determine the burden the state must meet to "justify[] its legislation."[81]

Dennis claims that AS 44.21.410 violates the equal protection clause by treating similarly situated indigent parents differently. That statute requires OPA to represent "indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency."[82] But the law does not require OPA, or any other state-appointed counsel, to represent indigent parents if the opposing party is represented by private counsel.[83]

Dennis's argument fails under our due process holding. Here the two classes of parents are those with a categorical right under *Flores* to appointed counsel, and those without. Alaska Statute 44.21.410 codified our decision in *Flores* that parents facing state opposition in custody cases have a due process right to appointed counsel, and gave OPA the responsibility of providing that constitutionally required counsel.[84]

---

[80] (...continued) 968 (Alaska 2005) (on-road and off-road Alaskan communities not similarly situated); *Shearer v. Mundt*, 36 P.3d 1196, 1199 (Alaska 2001) (attorney and nonattorney pro se litigants not similarly situated); *Lauth v. State, Dep't of Health & Soc. Servs., Div. of Pub. Assistance*, 12 P.3d 181, 187 (Alaska 2000) (children with one and children with no economically secure parents not similarly situated); *Smith v. State, Dep't of Corr.*, 872 P.2d 1218, 1227 (Alaska 1994) (discretionary and mandatory parolees not similarly situated).

[81] *Planned Parenthood*, 375 P.3d at 1137 (quoting *Alaska Pac. Assurance Co. v. Brown*, 687 P.2d 264, 269 (Alaska 1984)).

[82] AS 44.21.410(a)(4).

[83] *See id.*

[84] *See In re Alaska Network on Domestic Violence & Sexual Assault*, 264 P.3d 835, 838 (Alaska 2011) (interpreting the statute based on our *Flores* holding because it (continued...)

By contrast, we hold today that due process does not require appointment of counsel to the class of indigent parents to which Dennis belongs. The distinct due process concerns applying to each class of indigent parents allow us to conclude that they are not similarly situated without needing to conduct a full equal protection analysis. Because "real diversity justifies differential treatment," the differences between these classes of parents justify their differential treatment.[85] Alaska Statute 44.21.410 does not violate Dennis's equal protection rights under the Alaska Constitution.

## V.    CONCLUSION

We AFFIRM the decision denying Dennis's motion for appointment of counsel.

---

[84]    (...continued)
"was enacted in 1984 as part of the law establishing" OPA and its "language appears to have been drawn directly from *Flores*" (citing *Office of Pub. Advocacy v. Superior Court, Second Judicial Dist.*, 799 P.2d 809, 810 (Alaska App. 1989))).

[85]    *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994).