**In the Matter of ALASKA NETWORK ON DOMESTIC VIOLENCE AND SEXUAL ASSAULT.**

No. S–13685.

Supreme Court of Alaska.

Dec. 2, 2011.

---

Beth Lewis Trimmer, Assistant Public Advocate, and Rachel Levitt, Public Advocate, Anchorage, for Petitioner.

Christine McLeod Pate, Supervising Attorney, ANDVSA Legal Advocacy Project, Sitka, for Respondent.

James J. Davis, Jr., Alaska Legal Services Corporation, Anchorage, for Amicus Curiae Alaska Legal Services Corporation.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CHRISTEN, Justice.

## I. INTRODUCTION

We granted the Office of Public Advocacy's petition for review on the limited question whether the Alaska Network on Domestic Violence and Sexual Assault (ANDVSA) qualifies as a "public agency" within the meaning of *Flores v. Flores* and AS 44.21.410(a)(4), such that the Office of Public Advocacy is required to provide representation to an indigent party in a child custody dispute in which the other party is represented by ANDVSA. Because we maintain our holding from *Flores* that it would be fundamentally unfair, in the specific context of child custody disputes, to allow public funding to support one party but not that party's indigent opponent, we hold that ANDVSA does qualify as a public agency for purposes of AS 44.21.410(a)(4).

## II. FACTS AND PROCEEDINGS

This case grew out of a child custody dispute in the Juneau Superior Court. The mother was represented by the Alaska Network on Domestic Violence and Sexual Assault (ANDVSA), a nonprofit corporation. The father was indigent, and the superior court determined, *sua sponte,* that it was obligated under AS 44.21.410(a)(4) to appoint counsel for him through the Office of Public Advocacy (OPA). After the court appointed counsel, OPA moved to intervene, withdraw from representation, and convert the representation issue to a declaratory judgment action. OPA argued that its appointment was improper under *Flores v. Flores*[1] and AS 44.21.410(a)(4) because ANDVSA is not a "public agency" for purposes of the requirement that OPA provide legal representation to indigent parties in child custody cases where the opposing party is represented by a public agency. OPA contended that ANDVSA is not a "public agency" because, among other things, it is funded through discretionary grants rather than state or federal budget designations, it is not a creature of the Alaska Legislature or United States Con-

---

1. 598 P.2d 893 (Alaska 1979) (requiring that party to litigation be provided with appointed counsel when opposing party is represented by public agency).

gress, and its Board of Directors is not appointed by any member of the state or federal executive branch. ANDVSA opposed OPA's motion to withdraw.

At a hearing on October 26, 2009, the superior court expressed doubts that it could "make any distinction at all for the purpose of applying the *Flores* holding between [Alaska Legal Services Corporation, which was the "public agency" in *Flores*] and [ANDVSA]" given that "they are both private nonprofits, largely publicly funded, subject to a number of strings and government entanglements by virtue of their public funding, [and] subject to a number of state and federal laws." The court also observed that "the *Flores* holding doesn't give a lot of explanation as to why [the Alaska Supreme Court] concluded that [Alaska Legal Services Corporation] is a public agency." Two days later, the superior court entered an order in which it: (1) granted OPA's motion to intervene for the purpose of filing a motion to withdraw as counsel for the father; (2) denied OPA's motion to withdraw as counsel; and (3) denied OPA's motion to convert the action to a declaratory judgment action.

OPA filed an original application with this court under Appellate Rule 404.[2] We ordered that the original application be converted into a petition for review to be considered under Appellate Rule 403, and granted the petition on the limited question whether ANDVSA qualifies as a "public agency" within the meaning of *Flores v. Flores* and AS 44.21.410(a)(4). We also ordered that OPA continue to represent the father in the underlying child custody dispute. In the interim between the filing of the original application and our order, the parents reached a custody agreement without the need for trial.

## III. STANDARD OF REVIEW

█ The question whether ANDVSA qualifies as a "public agency" is a question of law, which we review de novo.[3]

## IV. DISCUSSION

### A. Overview Of *Flores v. Flores* And AS 44.21.410(a)(4).

*Flores v. Flores* was a divorce proceeding in which custody of the divorcing couple's child was the only contested issue.[4] Both parties were indigent, but the father obtained the representation of the Alaska Legal Services Corporation (ALSC).[5] The mother asked that the Public Defender Agency be appointed to represent her in the divorce proceeding,[6] but the trial court ruled that counsel would not be appointed for the mother due to lack of agency funding. The court ordered that the case proceed with the mother unrepresented.[7]

On appeal, we held that, "[t]he interest at stake in this case is one of the most basic of all civil liberties, the right to direct the upbringing of one's child."[8] Given the nature of that right, we concluded that the "decided and frequently decisive disadvantage" to a parent not represented by counsel is "constitutionally impermissible where the other parent has an attorney supplied by a public agency."[9] We emphasized that the constitutional right to counsel in custody cases was "limited to cases ... where an indigent party's opponent is represented by counsel provided by a *public agency*."[10] We went on to hold that, because it had been stipulated that ALSC could not represent both parties in a

2. ANDVSA filed a response to OPA's original application in which it made procedural objections but acknowledged that "[t]he question of whether ANDVSA is a public agency should be addressed ... since the issue keeps recurring."

3. *See, e.g., Jacob v. State, Dep't of Health & Soc. Servs.*, 177 P.3d 1181, 1184 (Alaska 2008) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)) ("We apply our independent judgment to questions of law, adopting 'the rule of law most persuasive in light of precedent, reason, and policy.'").

4. 598 P.2d at 894.

5. *Id.*

6. *Id.*

7. *Id.*

8. *Id.* at 895.

9. *Id.* at 896.

10. *Id.* at 896 n. 12 (emphasis added).

divorce [11] and the Public Defender Agency's responsibility did not extend to such cases, "counsel should be appointed from the private bar," with compensation provided under Alaska Administrative Rule 15.1.[12]

Alaska Statute 44.21.410(a)(4) was enacted in 1984 as part of the law establishing the Office of Public Advocacy. The statute provides in part: "The office of public advocacy shall . . . provide legal representation . . . to indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency." This language appears to have been drawn directly from *Flores*.[13] Because neither party argues that the limited legislative history of AS 44.21.410(a)(4) provides an independent basis for interpreting the statute, we base our holding entirely on *Flores*.

### B. Under *Flores*, ANDVSA Is A Public Agency.

#### 1. *Flores* defined "public agency" largely by reference to an organization's public funding sources.

In holding that there was a right to counsel in *Flores*, we noted that, although the custody proceedings below had been initiated by a "private individual," [14] that individual "was represented by counsel provided by a public agency" and "[f]airness alone dictates that the petitioner should be entitled to a similar advantage." [15] Later in the opinion, we reiterated that a parent in a custody case "who is without the aid of counsel . . . will be at a decided and frequently decisive disadvantage" and "[t]his disadvantage is constitutionally impermissible where the other par-

ent has an attorney supplied by a public agency." [16]

█ This emphasis on fairness and equal advantage indicates that the right to counsel where the opposing party is represented by a "public agency" arises, at least in part, from the government's otherwise one-sided support for the party with an attorney supplied by a public agency. Such support need not be provided exclusively through funding or the direct provision of government resources; but fairness considerations undoubtedly do arise where one party benefits from the government's funding of a "public agency." As ANDVSA puts it, this court was concerned in *Flores* with "the fundamental imbalance of power that occurs when one side has an attorney being paid in part by public funding and the other side is indigent and is without any counsel."

The notion that government funding sources are among the characteristics required for an organization to be classified as a "public agency" is underscored by the remedy we provided in *Flores*: after finding that ALSC and the Public Defender Agency could not provide representation under the circumstances of the case, we concluded that counsel should be appointed from the private bar, with attorney compensation provided by the State pursuant to Administrative Rule 15.1.[17] In other words, the solution to the potential unfairness of public agency representation for one party was to pay for representation of the other party through public funds, thus equalizing the public financial support on both sides of the dispute.[18]

---

11. *Id.* at 894.

12. *Id.* at 897.

13. *See Office of Pub. Advocacy v. Super. Ct., Second Jud. Dist.*, 779 P.2d 809, 810 (Alaska App. 1989) ("OPA has demonstrated . . . that the language of [AS 44.21.410(a)(4)] was derived from *Flores*.").

14. This was in contrast to prior cases—cited in *Flores*—in which custody-related proceedings prosecuted *by the State* were found to entitle an indigent defendant to court-appointed counsel. *See, e.g., Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir.1974); *Reynolds v. Kimmons*, 569 P.2d 799 (Alaska 1977).

15. *Flores*, 598 P.2d at 895.

16. *Id.* at 896.

17. *Id.* at 897.

18. Commentators have placed similar emphasis on ALSC's funding sources. *See, e.g.,* Clare Pastore, *A Civil Right to Counsel: Closer to Reality?*, 42 Loy. L.A. L.Rev. 1065, 1070–71 (2009) (describing *Flores* as "holding that an indigent in a custody dispute is entitled to counsel when facing an opponent with a *publicly funded* lawyer") (emphasis added). Our own characterization of *Flores* in an unpublished decision noted, "*Flores* involved a civil child custody proceeding in which one of the parties was represented by

In its brief, OPA provides an overview of how courts in other jurisdictions have defined "public agency," both pre–1980 (i.e., "during the *Flores* period") and post–1980. OPA explains that this history is "set forth to give this Court a broad range of sources from which to review whether or not ANDVSA meets any 'public agency' definition." We find this approach overbroad. The question before us is not whether ANDVSA meets any public agency definition, but whether ANDVSA is a public agency under *Flores* and the related statute. Definitions of "public agency" used in other contexts and jurisdictions are useful only to the extent that they represent the background that the *Flores* court may have had in mind when it chose to use the term. But, given that the *Flores* court did not cite to any other jurisdictions or definitions, there is no indication of an intention to draw on prior interpretations of "public agency"; and it is unlikely that the court considered criteria for public agencies that only appeared in cases that came after *Flores.*

Moreover, where definitions from other jurisdictions are in direct conflict with the *Flores* holding that ALSC was a public agency, those definitions are clearly irrelevant to the question on appeal. It is reasonable to assume, at a minimum, that the *Flores* court was aware of the characteristics of ALSC specifically identified by Justice Connor in his partial dissent, where he noted that "the Alaska Legal Services Corporation is a private corporation and not an agency of the state or federal government." [19] The court presumably considered these aspects of ALSC's organizational structure and status, but nonetheless determined that ALSC was a public agency.

*Flores* thus suggests that the characteristics identified by Justice Connor—namely, being a private non-profit corporation with no connection to a formal government agency—do not preclude an organization from designation as a public agency. Several of the "public agency" definitions cited by OPA require that an organization be a government agency or government-created agency in order to qualify as a "public agency." To now adopt those definitions would, as ANDVSA argues, effectively overrule the approach we took in *Flores.* We decline to take that step.[20]

■ We conclude that the use of the term "public agency" in *Flores* must be understood as referring primarily to the nature of an organization's funding sources, and not to an organization's status as a government agency.

**2. Based on its funding sources and similarity to ALSC, ANDVSA should be considered a public agency.**

■ As of 1979, ALSC received approximately 78 percent of its funding from the national Legal Services Corporation (LSC), which was created by Congress as a private nonprofit corporation to distribute federal funds to local grantee legal assistance organizations.[21] ANDVSA's Legal Advocacy Project (the legal services arm of the organization) currently receives over 99 percent of its

[ALSC], essentially a government-funded entity." *Hamilton v. Hamilton,* Mem. Op. & J. No. 5331, 1994 WL 16459407, at *2 (Alaska, March 9, 1994) (contrasting the facts of *Flores* with those of *Hamilton,* in which the party requesting court-appointed counsel did not allege any government involvement in the opposing party's representation).

**19.** *Flores,* 598 P.2d at 900 n. 8 (Connor, J., dissenting in part, concurring in part).

**20.** OPA claims that it is not proposing to overrule the core premise of *Flores* "that a due process right to counsel for an indigent parent [exists] in a child custody proceeding." But it also contends that "the *Flores* Court did not provide an analysis for its conclusion that the 1978–

ALSC was a 'public agency' and ... the case law and definitions in existence at the time of the *Flores* decision do not, without more information, support that conclusion. The review [of case law and definitions] further supports the concerns raised by Justice Connor about labeling ALSC a 'public agency'...." To the extent that OPA is arguing that the holding that ALSC was a public agency (arguably as much a part of the *Flores* decision as the finding of a right to counsel) was incorrect, OPA seems to call for at least a partial overruling of *Flores.*

**21.** Overall federal funding comprised 96 percent of ALSC's total 1979 funding of approximately $1,763,286. An additional three percent came from state sources and one percent from tribal sources.

funding from the Department of Justice's Office on Violence Against Women (OVW), a federal AmeriCorps grant, and the State.[22] OPA argues that ANDVSA's funding structure is distinguishable from that of ALSC because LSC, a federally-created agency, provided (and continues to provide) direct funding to ALSC, while ANDVSA receives its state and federal government funding through discretionary grants rather than as budget items. In addition, OPA distinguishes the organizations' funding sources, noting that although LSC—which it describes as "ALSC's somewhat 'parent' corporation"—has a board appointed by the President and confirmed by the Senate, ANDVSA has no equivalent "parent" organization.

We do not find these distinctions to be meaningful. OPA provides no explanation for why funding received from the government through discretionary grants is less significant for purposes of designating a "public agency" than funding received through the normal state or federal budget process. More importantly, it is not clear that ALSC receives or ever did receive guaranteed budget funding rather than grants: though the record does not include detailed budget information about the status of ALSC in 1978–79, its 2009 accounting records label the majority of its funding from LSC as a "Basic Field Grant," and designate other government funding as, for example, "Family Caregiver Grants" and "Domestic Violence Grants"; and ALSC's 1978–79 accounting statements include a broad category of "grants and contracts" from LSC and a number of other sources. OPA implies that these contributions are non-discretionary or otherwise different from the grants that fund ANDVSA. But as ALSC explains in its amicus brief:

[S]ometimes a "grant" is issued to ALSC in lieu of a budgetary allocation and sometimes this is done because of budgetary and/or political concerns.... [C]ontrary to OPA's intimation, the application for funds from LSC is a competitive one and other nonprofit law firms could [compete] against ALSC ... for those funds.

Similarly, OPA's description of LSC as ALSC's "parent" corporation is called into question by the affidavit of ALSC's executive director Andy Harrington, who stated that "[a] review of the regulations reflects that LSC does not refer to the individual programs as LSC entities or LSC branch offices, nor does it refer to itself as the parent of the individual programs.... The most common term the regulations use to refer to the individual programs is 'recipients'...." The LSC–ALSC relationship does not seem to extend far beyond funding; as Harrington's affidavit makes clear, LSC places restrictions on how its funding can be used, but it does not create individual legal services programs, hire or fire those programs' directors, or appoint board members. Indeed, ANDVSA draws a compelling parallel between ALSC's relationship with LSC and its own relationship with the OVW, a federal agency that supplies most of ANDVSA's funding. Like LSC, OVW requires that ANDVSA comply with federal regulations and imposes other special conditions—including regular progress reports that are made available to the public—for ANDVSA to maintain its funding eligibility.

We conclude that the grounds OPA proposes for distinguishing between ALSC's and ANDVSA's funding structures and sources are not persuasive.[23] Indeed, based purely on the extent of government funding, ANDVSA might be considered to have more in common with the 1978–79 ALSC than the

---

22. The record does not appear to include information regarding the breakdown of ANDVSA's total budget.

23. OPA argues, alternatively, that even if the grants received by ANDVSA were considered government funding for public agency purposes, "the amount of money an entity receives from government is not solely determinative of whether the entity is the functional equivalent of a public agency." It derives this principle from a

United States Supreme Court case, *United States v. Orleans*, 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976). But like several of the cases OPA cites, *Orleans* turned on a context-specific statutory definition of "federal agency"—the phrase "public agency" was not actually used in the statute or the decision—within the Federal Tort Claims Act, a very different context than the right to counsel that is at issue here. *Id.* at 814, 96 S.Ct. 1971.

current ALSC does. ALSC received the majority of its funding—about 78 percent—from LSC in 1979, compared to 47 percent in 2009; ANDVSA's Legal Advocacy Project currently receives over 99 percent of its funding from federal and state government sources. We do not intend to establish a threshold for the proportion of government funding an organization must receive to qualify as a public agency; however, given that it is funded almost entirely by government sources, ANDVSA qualifies as a public agency based on its funding. We also emphasize that this holding extends only to ANDVSA and does not reach the question whether any other organization is a public agency for purposes of AS 44.21.410(a)(4).

### 3. ANDVSA is not meaningfully distinguishable from ALSC on any other grounds.

From its inception in 1966, ALSC has been governed by a board of fifteen directors; nine are attorneys selected by the Alaska Bar Association and six are non-attorneys nominated by other organizations specified in ALSC's bylaws. LSC has no power over the director staffing or board membership of its grantees, although the funding it provides is subject to restrictions on use. In addition to the funding distinctions discussed above, OPA argues that ANDVSA differs from ALSC because its board of directors includes appointees from the Alaska Bar Association, "an instrumentality of the State of Alaska," whereas ANDVSA's board consists of all members of the ANDVSA corporation and is not subject to similar government "direction or control."

ANDVSA responds that the organizational differences cited by OPA are minor and unrelated to whether ANDVSA is a public agency. We agree. Although OPA emphasizes the government "control and direction" exercised on ALSC's board, board composition for both ALSC and ANDVSA is determined by each organization's self-imposed bylaws.[24] The somewhat attenuated "government" presence in the form of Bar Associ-

ation appointees on ALSC's board is not mandated by the State; the fact that ANDVSA could presumably choose to adopt a similar composition by amending its bylaws suggests that this is not a defining characteristic of the organization sufficient to place it in a different category from ALSC.

## V. CONCLUSION

We AFFIRM the superior court's holding that ANDVSA is a public agency under *Flores* for purposes of AS 44.21.410(a)(4).

STOWERS, Justice, dissenting.

STOWERS, Justice, dissenting.

I agree with Justice Connor's dissenting opinion in *Flores v. Flores*[1]: (1) the Alaska Legal Services Corporation is a private nonprofit corporation and not an agency of the state or federal government; (2) therefore, a "public agency" in the sense of being an agency of the government did not provide Mr. Flores with counsel; and (3) there is no authoritative precedent, state or federal, to firmly support an extension of due process rights to an indigent parent proceeding pro se in a custody case where the other parent has counsel provided by the Alaska Legal Services Corporation (ALSC). Of course, *Flores* is precedent with respect to custody cases where one parent is represented by ALSC, and I am bound to follow it.

But given the complete lack of analysis or explanation of how and why the *Flores* court determined that ALSC is a "public agency," and my sense that the *Flores* court's use of the phrase "public agency" was a justification unconsidered and derived from whole cloth, I am loath to join in the *ANDVSA* opinion and expand *Flores* to include ANDVSA merely because ANDVSA shares certain organizational and funding source similarities with ALSC. I don't think *stare decisis* compels us to extend one conclusory opinion resting on questionable premises to another case involving a different private, non-profit corporation. I don't see that the due process clause

---

24. *See* Alaska Legal Services Corporation Bylaws art. IV, *available at* http://www.alsc-law.org/public-corp/bylaws/Bylaws_May_3_2008.pdf.

1. 598 P.2d 893, 897–900 and 900 n. 8 (Alaska 1979) (Connor, Justice, dissenting in part).

of the Alaska Constitution requires us to do so. If as a matter of policy *Flores* should be extended beyond its facts, that is the legislature's prerogative.

One of the arguments in *Flores* was that the Public Defender Agency should be required to represent such an indigent parent. (The Office of Public Advocacy had not yet been created at the time *Flores* was decided.) The court rejected that argument, but suggested that ALSC probably could provide both parties with legal representation if appropriate regulations were developed such that "two attorneys employed by ALSC could represent conflicting positions in litigation, each having undivided loyalty to his client and fully able to exercise that independent professional judgment which is required by the Code of Professional Responsibility."[2] The court "encouraged such an effort."[3] But without such regulations in place, and having rejected the argument that the Public Defender Agency was required to provide counsel, the court determined in *Flores* that counsel for the indigent parent should be appointed from the private bar.[4]

I agree with the court that it appears likely that the legislature considered the decision in *Flores* when it enacted AS 44.21.410(a)(4) in 1984 as part of the law establishing the Office of Public Advocacy. Alaska Statute 44.21.410(a)(4) provides in part that "[t]he office of public advocacy shall ... provide legal representation ... to indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a public agency."[5]

I therefore agree with the Office of Public Advocacy that ANDVSA is not a public agency and that its appointment was improper under *Flores* and AS 44.21.410(a)(4). I re-

spectfully dissent from today's opinion that decides to the contrary.

---

2. *Id.* at 897.

3. *Id.* at 897 n. 14.

4. *Id.* at 897.

5. This language mirrors the court's cautionary note in *Flores:* "We emphasize that our holding in this opinion is limited to cases involving child custody where an indigent party's opponent is represented by counsel provided by a public

agency." *Id.* at 896 n. 12. It is noteworthy that this reference to a "public agency" is only the second instance where that term is used in the majority's opinion. The first instance is the conclusory and unsupported *finding:* "Although a private individual initiated the proceeding below, he was represented by counsel provided by a public agency." *Id.* at 895. The court made this finding with no analysis or explanation.