NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOHN M., | ) | |
| | ) | Supreme Court No. S-18839 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-20-04435 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| MICHELLE M., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2086 – April 16, 2025 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Jason A. Weiner, Jason Weiner & Associates, P.C., Fairbanks, for Appellant. Christian W. Carpeneti and William G. Cason, Holland & Hart LLP, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

## I. INTRODUCTION

A mother represented by pro bono counsel provided by the Alaska Network on Domestic Violence and Sexual Assault sought primary physical custody and sole legal custody of her five children. The father requested appointed counsel after the attorney he had hired withdrew. The superior court denied his request and awarded

---

\*      Entered under Alaska Appellate Rule 214.

primary physical custody to the mother and joint legal custody to both parents. The father appeals, alleging that the court made multiple legal and factual errors.

It was error to deny the father appointed counsel, but the error was harmless. However, we vacate the custody decision and remand for more detailed findings and conclusions about domestic violence and reconsideration of the custody award in light of them.

## II.    FACTS AND PROCEEDINGS

John M. and Michelle M. were married and have five children. They separated in the fall of 2019 and the children moved with Michelle from the family home. John stayed in the travel trailer that had been the family's primary home. John and Michelle shared custody equally while separated. Four of their children attended school and had individualized education plans (IEPs). One child was diagnosed with an allergy to cold exposure.

After a custody exchange in January 2020, Michelle petitioned for short-term and long-term domestic violence protective orders (DVPOs) against John, claiming that he had grabbed her by the hair and thrown her to the ground. The court granted both petitions, finding by a preponderance of the evidence that John had committed or attempted to commit assault or reckless endangerment against Michelle. It granted Michelle temporary custody of the children and authorized John to have four hours of weekly supervised visitation.

Michelle filed for divorce after she filed a petition for a DVPO. She sought sole legal and physical custody of the children and asked that John be restricted to supervised visitation due to the domestic violence case. John answered, seeking primary physical custody. In her second trial brief Michelle advised the court that she intended to move out of state with her fiancé. Trial was bifurcated to address custody and property issues separately, and the court issued a decree of divorce.

Michelle was represented by pro bono counsel through the Alaska Network on Domestic Violence and Sexual Assault (ANDVSA). John hired counsel,

but his attorney withdrew shortly before the custody trial was scheduled to begin. John filed a motion arguing that he was entitled to appointed counsel under *Flores v. Flores*[1] because Michelle was represented by ANDVSA.

The superior court granted his motion and appointed the Office of Public Advocacy (OPA) to represent him. OPA moved to vacate the appointment, arguing that John did not qualify for *Flores* counsel because Michelle was represented by pro bono counsel supervised by ANDVSA, not by an ANDVSA staff attorney. John opposed, arguing that pro bono attorneys working with ANDVSA created the same unfair situation as ANDVSA staff attorneys when the opposing party was unrepresented. The court granted OPA's motion and vacated its appointment.

In October 2021 the court appointed a guardian ad litem (GAL) to represent the children's best interests. A month later, Michelle petitioned for a second DVPO. The court granted a short-term order, but denied the long-term DVPO after a hearing.

After representing himself for 18 months, John retained counsel again in July 2022. The custody trial was held over three days in September 2022 and January 2023. The GAL filed a pretrial brief recommending that the court award primary physical custody and sole legal custody of the children to Michelle.

The parties called 13 witnesses. Michelle called her aunt and her fiancé to testify about her parenting skills, relocation plans, and the children's special needs.

Michelle testified that John was abusive to her. She described the events leading to the 2020 DVPO, alleging that he assaulted her after she told him she would seek sole custody if they could not cooperate to parent the children. She also described another incident when John put a pillow over her face and she testified that he had once hit her with a car.

---

[1]    598 P.2d 893 (Alaska 1979) (recognizing due process right to appointed counsel in custody proceedings when other parent is represented by public agency).

John called several of his family members to testify about Michelle's parenting skills and alleged violence. He also called several police officers who had responded to calls at the family home and a therapist who had completed an intake assessment of the children.

John called the GAL, wanting to question her about her investigation. The court limited her testimony to "factual matters" relating to the nature of her investigation, such as whom she interviewed.

John testified that Michelle had committed domestic violence against him. He said that she hit him once early in their relationship and described two other incidents when she had interfered with his vehicle. In the first, he claimed that Michelle had jumped onto the hood of his car while he was driving away. In the second, he testified that she "put[] her hand on the wheel" while he was driving and "trie[d] to jam it into park," making the truck "slid[e] sideways" on the road. Finally, he described an incident when he called the police after Michelle broke the trailer window with a rock while he was inside.

The superior court issued a final custody order in September 2023. It found that "both parents committed an act of domestic violence" but "[n]either parent has a history of committing domestic violence." The court took judicial notice of an act of domestic violence John committed against Michelle, relying on the 2021 DVPO. And it found that Michelle "committed one act of domestic violence against [John] when she jumped up on his car, while he was trying to disengage." The court found that Michelle's testimony about other acts of domestic violence by John was not credible and there was insufficient evidence to support her claims. The court did not make any findings regarding the incident when John alleged Michelle grabbed the wheel while he was driving, the broken trailer window, or the allegations in the first DVPO.

The court concluded that moving out of state with Michelle was in the children's best interests, finding that she was "better able to meet the educational and

mental health needs of the children" and "provides a more stable living situation for [them]." The court observed that trial testimony showed that John had removed the children from counseling, questioned whether they needed IEPs, and opposed their getting vaccinations required by their school. The court further found that his "current living environment is not satisfactory to meet the needs of the children," describing it as "a 40-foot travel trailer, with no running water and insufficient insulation." The court permitted Michelle to move with the children "with caution," based on its concern about Michelle's "ability to promote a relationship between the children, [John,] and his extended family." It awarded primary physical custody to Michelle during the school year and joint legal custody, but it granted Michelle the authority to make decisions about the children's education and vaccinations.

John appeals the order denying him appointed counsel and the custody award.

## III. STANDARD OF REVIEW

Whether a party is entitled to appointed counsel under *Flores v. Flores* is a question of law we review de novo, "adopt[ing] the rule of law that is most persuasive in the light of precedent, reason, and policy."[2]

"Trial courts have broad discretion in determining child custody," and we set aside a custody award "only if the court abused its discretion or if its findings of fact are clearly erroneous."[3] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors

---

[2] *Dennis O. v. Stephanie O.*, 393 P.3d 401, 405-06 & 406 n.12 (Alaska 2017).

[3] *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

while ignoring others.' "[4]  A factual finding is clearly erroneous if, "based on a review of the entire record, the finding leaves us with a definite and firm conviction that a mistake has been made."[5]  And we affirm factual findings based on judicial notice "only if, viewing the evidence in the light most favorable to the party against whom judicial notice is to be taken, fair-minded jurors could not disagree about the truth of the proposition to be noticed."[6]

We review a trial court's evidentiary rulings, including the exclusion of testimony, for abuse of discretion.[7]  However, we interpret the civil rules de novo.[8]  We reverse based upon the erroneous exclusion of evidence "only if necessary to ensure 'substantial justice.' "[9]

Finally, "[w]e review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[10]

## IV.   DISCUSSION

### A.   John Was Entitled To Appointed Counsel.

John argues that he was entitled to appointed counsel under *Flores v. Flores*.  The superior court initially appointed counsel but later vacated the appointment

---

**4**     *Judd v. Burns*, 397 P.3d 331, 335 (Alaska 2017) (quoting *Riggs v. Coonradt*, 335 P.3d 1103, 1106 (Alaska 2014)).

**5**     *Brett M. v. Amanda M.*, 445 P.3d 1005, 1010-11 (Alaska 2019) (quoting *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017)).

**6**     *F.T. v. State*, 862 P.2d 857, 864 (Alaska 1993).

**7**     *See Wasserman v. Bartholomew*, 923 P.2d 806, 812-14 (Alaska 1996).

**8**     *Alaska Fur Gallery, Inc. v. First Nat'l Bank Alaska*, 345 P.3d 76, 84 (Alaska 2015).

**9**     *Guilford v. Weidner Inv. Servs.*, 522 P.3d 1085, 1093 (Alaska 2023) (quoting *Luther v. Lander*, 373 P.3d 495, 499 (Alaska 2016)).

**10**     *Downs v. Downs*, 440 P.3d 294, 297 (Alaska 2019) (quoting *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018)).

"[p]ursuant to *Dennis O. v. Stephanie O.*,"[11] holding that the "factual basis of *Flores v. Flores*" was not present in this case.

In 1979 we recognized in *Flores v. Flores* a due process right under the Alaska Constitution to appointed counsel for indigent parents in custody cases when the other parent is represented by a public agency.[12] Given the importance of the liberty right at stake — "the right to direct the upbringing of one's child" — and the "exceedingly difficult" nature of child custody determinations, we held that the "decided and frequently decisive disadvantage" an unrepresented parent faces in opposing a represented parent becomes "constitutionally impermissible where the other parent has an attorney supplied by a public agency."[13] "Fairness alone" required that the indigent, unrepresented mother there "should be entitled to a similar advantage" enjoyed by the father who was represented by the Alaska Legal Services Corporation (ALSC).[14] We therefore held that the mother "has the right to court-appointed counsel."[15]

In 1984 the Alaska legislature created OPA and charged it with, among other duties, "provid[ing] legal representation . . . to indigent parties in cases involving child custody in which the opposing party is represented by counsel provided by a

---

[11]    393 P.3d 401 (Alaska 2017) (denying court-appointed counsel to parent in custody dispute when other parent was represented by private counsel).

[12]    598 P.2d 893, 893-94 (Alaska 1979).

[13]    *Id.* at 895-96.

[14]    *Id.* at 895.

[15]    *Id.* at 893-94.

public agency."[16] That language, we have observed, "appears to have been drawn directly from *Flores*" and we have interpreted the two coextensively.[17]

In 2011 we decided *In re Alaska Network on Domestic Violence and Sexual Assault* (*ANDVSA*).[18] We concluded that the term "public agency" in *Flores* "must be understood as referring primarily to the nature of an organization's funding sources," not its "status as a government agency."[19] ANDVSA, we held, is a public agency under *Flores* because it is "funded almost entirely by government sources."[20]

More recently in *In re Office of Public Advocacy* we held that pro bono counsel provided by ALSC is representation by a public agency for *Flores* purposes.[21] We emphasized *Flores*'s focus on "the advantage that a parent represented by counsel from a public agency has in a custody case" and unfairness arising from the government's one-sided support.[22] Because "a private attorney who volunteered to take a case assignment from ALSC" was "provided" by ALSC and conferred "the same advantage as an ALSC staff attorney," we held that "[w]hether the attorney assigned by ALSC was a paid staff attorney or an unpaid volunteer pro bono attorney" does not affect our *Flores* analysis.[23]

John was entitled to appointed counsel under *ANDVSA* and *In re Office of Public Advocacy*. Michelle was represented by counsel provided by ANDVSA, an

---

[16]     Ch. 55, § 1, SLA 1984.

[17]     *In re Alaska Network on Domestic Violence and Sexual Assault* (*ANDVSA*), 264 P.3d 835, 838 (Alaska 2011); *see also In re Off. of Pub. Advocacy*, 514 P.3d 1281, 1283 (Alaska 2022).

[18]     *ANDVSA*, 264 P.3d at 835.

[19]     *Id.* at 839.

[20]     *Id.* at 839-41.

[21]     *In re Off. of Pub. Advocacy*, 514 P.3d at 1283.

[22]     *Id.* at 1286-87.

[23]     *Id.* at 1287-88.

agency we have held is a public agency like ALSC.[24]  That her attorney was a pro bono volunteer working with ANDVSA rather than a paid staff attorney is irrelevant.[25]

John argues that we should vacate the superior court's custody order because he was erroneously denied appointed counsel.  But "[t]he party alleging error bears the burden of showing the error was prejudicial."[26]  And John fails to carry his burden.

John claims he was prejudiced by the denial of counsel in various ways, but his arguments are baseless, speculative, or refuted by the record.  First, John argues that he was prejudiced by the GAL's failure to assist him in the custody proceedings.  But the GAL was appointed to represent the children's best interests — not to assist him.[27]  Next he asserts that appointed counsel would have required the GAL to be fair, would have helped him ensure that the children had counseling, and would have helped him prevent Michelle from attending the children's counseling sessions.  These arguments are pure speculation.[28]  He offers no evidence of bias from the GAL.  Nor does he indicate how an appointed attorney would have secured counseling for his children or prevented Michelle from attending any of the children's counseling sessions.[29]

---

[24]    *ANDVSA*, 264 P.3d at 836.

[25]    *In re Off. of Pub. Advocacy*, 514 P.3d at 1288.

[26]    *Jerry B. v. Sally B.*, 377 P.3d 916, 930 (Alaska 2016).

[27]    *See*  AS 25.24.310(c)  (authorizing  appointment  of  GAL  when representation of child's best interests serves child's welfare); Alaska R. Civ. P. 90.7(e) (recognizing GAL appointed to "represent and advocate for the best interests of the child").

[28]    *See Gipson v. State*, 575 P.2d 782, 785 (Alaska 1978) (declining to reverse error because it was "pure speculation to surmise that somehow the presence of counsel" would have changed outcome).

[29]    Michelle acknowledged that she initially participated in some joint counseling sessions with the children, but testified that she stopped at GAL's direction.

John's remaining claims of prejudice are refuted by the record. John argues that he was prejudiced because Michelle's attorney raised unnoticed issues at hearings. But the court did not entertain those efforts. John also had hired counsel at the time he claims his lack of counsel led the court to "develop[] the impression that [he] was not abiding by court rules" by not responding to Michelle's discovery requests. Likewise, he had counsel when he declined to call the children's first therapist to provide "actual testimony" to refute claims in the GAL's brief. At any rate, the court did not rely on the GAL's brief as evidence of any facts.[30] John has not shown that the lack of appointed counsel affected any substantial rights.

To the contrary, the record shows that the court took steps to ensure that John's rights were adequately protected while he represented himself. The court carefully explained terms and processes to him and gave him additional time to file motions. It continued the trial several times while John sought representation. The court granted him a continuance after he retained counsel to allow his attorney time to prepare, even though "late retention of counsel does not necessarily warrant a continuance."[31] John ultimately was represented at trial by an attorney who had over two months to prepare. He has not demonstrated that the erroneous denial of appointed counsel prejudiced him.

## B. The Domestic Violence Findings Are Not Sufficient For Our Review.

John argues that the superior court erred by finding that he committed an act of domestic violence against Michelle. He also asserts that the evidence demonstrates that Michelle perpetrated more than one incident of domestic violence and that the court therefore erred by failing to apply the rebuttable presumption against custody to her.

---

[30] *See* Alaska R. Civ. P. 90.7(h) cmt. (prohibiting use of GAL's brief as evidence in absence of stipulation).

[31] *Siggelkow v. Siggelkow*, 643 P.2d 985, 987 (Alaska 1982).

When fashioning a custody order, the superior court must consider a number of statutory factors, including whether the parents have a history of domestic violence.[32] Alaska Statute 25.24.150(g) creates a rebuttable presumption against awarding physical or legal custody to a parent with "a history of perpetrating domestic violence." That history is defined as "one incident of domestic violence [during which] the parent caused serious physical injury" or "more than one incident of domestic violence."[33] A parent may rebut the presumption by satisfying specified conditions or "because of other circumstances that affect the best interests of the child."[34] If the court finds that both parents have a history of domestic violence, then it must determine whether one parent is "less likely to continue to perpetrate the violence" and if so, award custody to that parent with a requirement to complete a treatment program, or else award custody to a "suitable third person."[35] If it finds both parents have a history of domestic violence and neither is more likely than the other to continue to perpetrate violence, then the court has discretion not to apply the presumption against either parent.[36]

The court found that John and Michelle each committed one act of domestic violence. It took judicial notice of the 2021 DVPO to find that John committed one act of domestic violence against Michelle. The court found that Michelle committed criminal mischief by jumping on John's car. It did not find that either parent had a history of domestic violence or apply the rebuttable presumption in AS 25.24.150(g) to John or Michelle.

---

[32] AS 25.24.150(c)(7).

[33] AS 25.24.150(h).

[34] *Id.*; *see also Joy B. v. Everett B.*, 451 P.3d 365, 369-72 (Alaska 2019); *Stephanie F. v. George C.*, 270 P.3d 737, 754 (Alaska 2012).

[35] AS 25.24.150(i).

[36] *Mallory D. v. Malcolm D.*, 290 P.3d 1194, 1207 (Alaska 2012).

It was error to take judicial notice of the existence of a DVPO to prove the specific allegations underlying it.  It also is not clear from the court's findings whether it considered evidence of other potential acts of domestic violence.  We therefore vacate the custody order and remand for further fact finding about domestic violence.

**1.     It was error to find John committed an act of domestic violence by taking judicial notice of a domestic violence protective order.**

The Alaska Rules of Evidence "leave considerable discretion to the court to take judicial notice of judicially noticeable facts."[37]  But "they leave no discretion to the court about which kinds of fact may be judicially noticed."[38]  A judicially noticeable fact is a fact "not subject to reasonable dispute" because it is either "generally known within this state" or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."[39]  Court records "may be judicially noticed to show 'that a prior suit was filed, who the parties were, and so forth,' " but we have warned that "contested factual findings contained in court records may be in dispute and generally are not the proper subjects of judicial notice."[40]  We affirm "taking judicial notice only if, viewing the evidence in the light most favorable to the party against whom judicial notice is to be taken, fair-minded jurors could not disagree about the truth of the proposition to be noticed."[41]

---

[37]     *F.T. v. State*, 862 P.2d 857, 863 (Alaska 1993).

[38]     *Id.*

[39]     Alaska R. Evid. 201(b).

[40]     *Amy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 440 P.3d 273, 281 (Alaska 2019).

[41]     *F.T.*, 862 P.2d at 864.

In *F.T. v. State* we specifically held that it was error to take judicial notice of prior domestic violence restraining orders to establish that a parent had committed acts of domestic violence.[42] It was error to do the same thing here.

### 2. The domestic violence findings are insufficient for our review.

The superior court "must make detailed findings on alleged incidents of domestic violence" under AS 25.24.150.[43] These findings must address "allegations of serious incidents of domestic violence"[44] and "give a clear understanding of the grounds upon which [the court] reached its decision."[45]

John testified that Michelle had committed several crimes of domestic violence. He testified that she threw rocks at his trailer door while he was inside and shattered the door's glass. Both Michelle and a police officer corroborated his testimony. John also described an incident in the winter of 2010 or 2011 when Michelle grabbed the steering wheel of the vehicle he was driving and attempted to shift the gear into park as they drove down the highway. Michelle denied grabbing the steering wheel but admitted that she took the car out of gear while they were driving. John's mother testified that she once saw Michelle jump on the hood of John's car when he was trying to drive away.

Michelle testified about the incident she had described in the 2020 petition. The petition, a recording of the hearing, and the short- and long-term DVPOs were admitted as evidence in the custody hearing. She denied jumping on John's car, claiming instead that he hit her. She also alleged that John once put a pillow over her

---

[42] *Id.*

[43] *Sarah D. v. John D.*, 352 P.3d 419, 429 (Alaska 2015).

[44] *Id.* at 431. For the purposes of AS 25.24.150, the term "domestic violence" includes offenses against the person and certain property offenses, including criminal mischief. *See* AS 18.66.990; 25.90.010.

[45] *Timothy W. v. Julia M.*, 403 P.3d 1095, 1108-09 (Alaska 2017) (quoting *Price v. Eastham*, 128 P.3d 725, 727 (Alaska 2006)).

face, preventing her from breathing, and that he would hit the children when they were disobedient.

The superior court found that Michelle committed one act of domestic violence (criminal mischief) based on the incident when she jumped on the hood of John's car.[46] The court's order, however, makes no mention of John's other allegations against Michelle. It also found that John committed a single act of domestic violence, based solely on the erroneous judicial notice of the 2021 DVPO, again without mentioning any of the evidence Michelle presented about his alleged violence that led the court to grant her DVPO petition in 2020.

Without findings about these allegations, we are unable to discern why the court concluded that John and Michelle each committed a single act of domestic violence. Both John and Michelle presented evidence of multiple possible acts of domestic violence, but the superior court did not address them. Its findings are insufficient to "give [us] a clear understanding of the grounds upon which it reached its decision"[47] that Michelle and John each committed one act of domestic violence. Without findings relating to the competing allegations of domestic violence, the court's decision does not "allow for meaningful appellate review."[48]

Michelle argues that even if the court had found that she committed multiple acts of domestic violence, it did not abuse its discretion because there is sufficient evidence in the record to support its decision not to apply the rebuttable presumption against her. But without findings of fact that allow a clear understanding

---

**46**  *See* AS 11.46.486.

**47**  *Timothy W.*, 403 P.3d at 1109 (quoting *Price*, 128 P.3d at 727).

**48**  *Id.*

of the reasons for the court's decision, we cannot determine whether the court's order was an appropriate exercise of discretion or an abuse of it.[49]

The court's custody award was primarily based on its assessment of the parents' ability to meet the children's needs. Without findings to show how the court took into consideration the evidence about domestic violence, we are unable to tell whether its custody decision may have "come out differently on the domestic violence issue."[50] We therefore vacate the custody award and remand for additional findings regarding domestic violence.

### C. The Court Did Not Otherwise Abuse Its Discretion In Determining Custody.

In addition to the court's domestic violence findings, John challenges the custody award on several grounds, arguing that the court: (1) erred by finding that his residence lacked running water and sufficient heat; (2) demonstrated socioeconomic bias by making that finding; and (3) failed to consider the children's extended family and roots in Alaska, the possibility of alienation by Michelle, and testimony regarding alcohol in Michelle's home. We are not persuaded by his arguments.

#### 1. The superior court did not clearly err by finding that John's home lacked running water and sufficient insulation.

John argues that the court erred by finding that his home did not have running water or adequate heating. John remained in the trailer in which the entire

---

[49] Michelle also argues her conduct is not domestic violence as a matter of law because she acted in self defense when she shifted John's truck into neutral on the highway. Even if that is true, the superior court must make findings sufficient for our review. *See Sarah D.*, 352 P.3d at 432 & n.50. Michelle also argues that breaking the trailer window was not domestic violence because John did not present evidence that he owned the trailer or that he felt threatened by her conduct. Criminal mischief does not require proof of ownership, just proof of an interest in the property that Michelle was not privileged to infringe; nor does it require fear. *See* AS 11.46.990(13); *Sarah D.*, 352 P.3d at 434.

[50] *Solomon v. Solomon*, 420 P.3d 1234, 1243 (Alaska 2018).

family had lived before Michelle moved. Michelle testified that sometimes "it would be too cold out" to fill the water tank that served the trailer "so we wouldn't be able to bathe" or do laundry. She stated that the trailer was not suited for winter living in Alaska, recounting once trying to use straw bales for insulation in the winter. John testified that the trailer had running water and showers. He also testified that it was adequately heated by a Toyo stove.

John and Michelle presented contradictory testimony about the adequacy of the trailer for the children's needs. But it is the trial court's province, not ours, to determine the weight given to conflicting testimony.[51] And we give particular deference to findings based on oral testimony.[52] Because the record supports the superior court's finding that John's trailer lacked running water and adequate insulation for Alaskan winters, it did not clearly err.

**2. The superior court did not demonstrate socioeconomic bias.**

John argues that the superior court's repeated references to the lack of running water and heat at his home demonstrate socioeconomic bias against him. He makes this argument for the first time on appeal.[53]

A party alleging judicial bias must demonstrate that the judge "formed an unfavorable opinion of the party from extrajudicial information" or "hear[d], learn[ed], or d[id] something [during the proceedings] so prejudicial that further participation [in the proceedings] would be unfair."[54] John's sole contention is that the court's finding that his home lacked running water and adequate insulation demonstrates its

---

[51] *See Evans v. Evans*, 869 P.2d 478, 481 (Alaska 1994).

[52] *Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 398 (Alaska 2017).

[53] We have previously addressed a party's claim of judicial bias even when it was not raised during trial. *See Downs v. Downs*, 440 P.3d 294, 299 (Alaska 2019).

[54] *Park v. Brown*, 549 P.3d 934, 945 (Alaska 2024) (quoting *Downs*, 440 P.3d at 299-300).

socioeconomic bias against him. But comments and rulings that were "the result of opinions and attitudes formed in court by the evidence that the judge heard" do not demonstrate bias.[55] Because the court's finding is supported by the record, it does not demonstrate bias.[56]

Although John suggests that the court's references to heat and running water reflect socioeconomic bias, the record shows that the court's considerations were appropriately based on the children's needs and best interests. When fashioning a custody award, the children's best interests are "paramount" for the superior court.[57] Michelle presented evidence that one of their children is allergic to the cold. She provided a doctor's note confirming that the allergy was severe enough that the child was prescribed an epi-Pen. It was undoubtedly in this child's best interests for the court to determine whether both parents' homes were suitable to keep the child warm, as well as to provide for the hygiene of the whole family.

### 3. The court considered other pertinent factors.

John argues that the court failed to consider the children's extended family and roots in Alaska, the possibility that Michelle was alienating them from him, and testimony regarding alcohol in Michelle's home. The custody order indicates otherwise. The court recognized the children's relationships with their extended family and the negative impact that leaving their father and extended family in Alaska would have on them. But it ultimately concluded that the impact would be greater if the children stayed in Alaska with John and their mother relocated. The court also addressed the possibility that Michelle would alienate the children from their father, expressly noting "concerns about [her] ability to promote a relationship between the

---

[55]     *Angelica C. v. Jonathan C*., 519 P.3d 334, 345 (Alaska 2022) (quoting *Hanson v. Hanson*, 36 P.3d 1181, 1186 (Alaska 2001)).

[56]     *See id*.

[57]     *John E. v. Andrea E.*, 445 P.3d 649, 655 (Alaska 2019).

children, [their f]ather and his extended family." The court's concern was so significant that it retained jurisdiction over the matter to ensure that Michelle would not interfere with the children's communication and relationships with John and his family. Finally, the court did not consider any testimony regarding alcohol in Michelle's house because that testimony was properly excluded as hearsay. John's arguments are not persuasive.

### D. The Superior Court Did Not Abuse Its Discretion By Limiting John's Examination Of The GAL.

John called the GAL as a witness at trial to question her about "the nature and value of services . . . rendered in this case." The GAL and Michelle objected, relying on Civil Rule 90.7. That rule limits GAL testimony to "exceptional circumstances and then only as to factual matters."[58] The court restricted John's questioning pursuant to Rule 90.7, allowing him to ask her only about whom she did and did not speak with during her investigation. John argues that he was denied the opportunity to meaningfully question the GAL. Michelle responds that the GAL's testimony was properly limited under the rule.

GALs ordinarily do not testify in custody trials. They are advocates for the child's best interests, not expert witnesses.[59] However, Rule 90.7(i) authorizes GAL testimony about matters that (1) "relate[] to an uncontested issue"; (2) "relate[] to the nature and value of services rendered by the guardian ad litem" in the present case; or (3) are "necessary to present factual evidence on a material issue that is not available from another source." A testifying GAL "may be cross-examined as any other witness."[60]

The superior court allowed John to question the GAL about the "nature and value of services" she provided, specifically about people she did and did not

---

[58] Alaska R. Civ. P. 90.7(e) cmt.

[59] *Id.*

[60] Alaska R. Civ. P. 90.7(i)(4).

interview, and about whether she was aware of certain facts when she wrote her report. The superior court did not abuse its discretion by limiting John's examination of the GAL to factual inquiries about her investigation.

John also argues that it was improper for the superior court's findings and conclusions to rely on assertions in the GAL's brief. He claims that the court impermissibly considered claims in the GAL's brief about his position regarding his children's continued counseling and the conditions of his home. He argues that those facts were not established at trial.

Commentary to Rule 90.7(h) states that a GAL's brief "cannot be treated as testimony or as evidence of any fact unless agreed to by the parties. Absent a stipulation, facts discussed in the [GAL]'s brief must be proved at trial." We have already concluded that evidence presented at trial supports the superior court's findings about water and heat in John's home. Evidence in the record also supports its findings about the children's counseling.

The superior court found that "[John] cancelled the children's counseling" and "demonstrates that he does not understand or accept[] the mental health needs of the children." The children began seeing a counselor in early 2022. Michelle testified it was going well until the counselor called her and informed her that John had removed them from counseling. According to Michelle, the counselor said that all of their appointments were cancelled and she could not see them again until John gave his permission. Michelle subsequently sought interim legal custody to return the children to counseling because ending the counseling caused the children "significant stress and anxiety."

John denies that he removed the children from counseling. He says that Michelle's testimony is hearsay.[61] But at trial he admitted that he asked their therapist

---

[61] John did not object to this testimony at trial.

to "postpone" future appointments. He testified that he did so due to concerns about the children's privacy and lack of progress. But the GAL obtained a protective order maintaining confidentiality of the children's therapy records because *John* had asked for them. The court noted that it had confirmed that Michelle did not attend the children's therapy sessions and found that there was "no basis" for John's concerns.

It is the superior court's job to weigh conflicting evidence and determine witness credibility;[62] it did not clearly err in finding that John removed the children from counseling. Because its findings are supported by the record independently of the GAL's brief, we see no reversible error.[63]

## V.    CONCLUSION

We VACATE the custody award and REMAND for further findings of fact regarding domestic violence and reconsideration of its impact on custody.

---

[62]    *Anderson v. Wilson*, 555 P.3d 13, 22 (Alaska 2024).

[63]    *See Burns v. Burns*, 466 P.3d 352, 362-63 (Alaska 2020) (harmless error to rely on exhibit not entered into evidence because other evidence supported finding).